BRADLEY MARTIN, Jr., *v.* UNITED STATES (No. 246).[1]

RESIDENCE—PERSONAL EFFECTS.

Apart from any question of legal citizenship, one who is in good faith residing and making his home abroad, according to the evidence, and who visits the United States with no intention of remaining here, is entitled to bring in his wearing apparel—his personal effects—free of duty.

United States Court of Customs Appeals, January 5, 1911.

APPEAL from a decision of the Board of United States General Appraisers, Abstract 23265 (T. D. 30601).

[Reversed.]

*Davies, Stone, Auerbach & Cornell (Harold Harper* of counsel) for appellant.

*D. Frank Lloyd,* Assistant Attorney General (*Wm. K. Payne* on the brief), for the United States.

Before MONTGOMERY, HUNT, SMITH, BARBER, and DE VRIES, Judges.

HUNT, Judge, delivered the opinion of the court:

The appellant, Bradley Martin, jr., brought with him into the United States certain wearing apparel and personal effects. Notwithstanding the objection of the appellant, the collector assessed duty. Upon appeal to the Board of General Appraisers, the protest of the appellant was overruled. Appellant asks a reversal.

The case is controlled by paragraph 709 of the tariff act of 1909, which reads as follows:

709. Wearing apparel, articles of personal adornment, toilet articles, and similar personal effects of persons arriving in the United States; but this exemption shall only include such articles as actually accompany and are in the use of, and as are necessary and appropriate for the wear and use of such persons, for the immediate

---

purposes of the journey and present comfort and convenience, and shall not be held to apply to merchandise or articles intended for other persons or for sale: *Provided,* That in case of residents of the United States returning from abroad, all wearing apparel and other personal effects taken by them out of the United States to foreign countries shall be admitted free of duty, without regard to their value, upon their identity being established, under appropriate rules and regulations to be prescribed by the Secretary of the Treasury, but no more than one hundred dollars in value of articles purchased abroad by such residents of the United States shall be admitted free of duty upon their return.

The contention of the appellant is that the board erred in its holding that he was a resident of the United States at the time of his arrival at the port of New York on October 9, 1909, and therefore that duty was properly assessed. The substance of Mr. Martin's testimony is that his parents are citizens of the United States; that he is a married man, 36 years of age; that in 1881 he went abroad for the summer; that he stayed abroad five years; that at the time of his arrival in New York, in 1909, he resided in London and in Scotland; that at the time of his marriage, in 1904, he leased a place of his own in Scotland but kept his residence with his father in London; that he married a lady who had resided in Scotland for about nine years before their marriage; that in 1890 he went to Christ Church, Oxford, and remained there for about four years; that thereafter he went to the Harvard law school, took a three years' course there, and was again abroad from 1897 to 1904; that his custom was to come to the United States for two or three months each year in order to transact business for his father; that since 1906 he has had a shooting place in Scotland; that he has a floor in his father's house in London and keeps his own furniture there; that he always claimed London to be his residence; that he paid income tax in England during the years 1907 and 1908; that he never voted in the United States; that when he came to New York in October, 1909, he had no intention of remaining permanently in America but intended to return to Great Britain at the end of a short period; that until 1881 he resided in New York at the house of his father; that his wife has a life interest in a house in New York; that this interest was presented to her by her father; that appellant and she live in it now; that in 1908 appellant was in the house about three weeks, and that he and his wife temporarily occupied the house at different times, about the dates of the birth of his children. Appellant also said that since his arrival in the United States the situation had changed and that he had gone into business in New York on December 9, or two months after his arrival. We quote as follows from the concluding part of the appellant's testimony:

Q. When do you expect to return to England?—A. Now, the situation has changed since I came in. I have now gone into business here. I went into business on December 9, two months after coming in.

Q. When did you change your mind?—A. About two days before I went into business.

Q. Where is your place of business?—A. I am in the banking business.

Q. Did you have any intention of going into the banking business before you left England?—A. No intention until about two days before I went in. I went in on December 9, and about two days before. My father used to be taxed here, and he had his taxes changed to England, and the principal reason for his changing was my sister marrying abroad, and my living abroad; so he changed his residence before I became of age, so I never had any official residence here.

Upon this evidence, which was all there was in the case, the board held that it was "not convinced" that the protestant was not a resident of the United States when he arrived in New York. Accordingly, the property of the appellant was regarded as dutiable.

Let us examine the statute. By its language, which exempts wearing apparel, articles of personal adornment, toilet articles, and similar personal effects of persons arriving in the United States, and limits the exemption only to such articles as are necessary and appropriate for the wear and use of "such persons" for the immediate purposes of "the journey and present comfort and convenience," the evident object to be accomplished was to relieve travelers, not intending to reside in the United States, from payment of duties upon such apparel and personal effects as they may bring with them for the convenience of travel and mere sojourn in the United States.

However, to the general words of the statute there is a restraint by which we find its scope restricted to nonresidents. Residents of the United States returning from abroad are specially referred to. As to them the particular intent of the law finds its expression in the proviso, whereby all of the personal property of such persons, property taken by them out of the United States, shall be admitted free of duty, but no more than $100 in value of articles purchased abroad. The apparent policy of the legislation exempting a nonresident traveling to, but not residing in, the United States, and not importing merchandise for others, or coming with a view to engage in commerce in the United States, was doubtless to facilitate travelers who are merely sojourning within the United States. Such persons, arriving in the country, neither put their personal property into trade markets nor compete with the manufacture or industry of the United States. Presumably, their effects all come from abroad and will be taken back, while the resident who comes home to remain introduces what things he brings with him into the mass of property in the country, and therefore must pay for such things as he may have purchased abroad, provided their value exceeds $100.

It is urged by the respondents' counsel that the exemptions of the statute can not be claimed by citizens of the United States who are residents abroad and who arrive in the United States. We do not so interpret the law.

The exemption of property of "persons" arriving in the United States is very broad. There is no limitation with respect to citizen-

ship or other status. All inquiry becomes immaterial except that which is directed to ascertaining whether or not the person arriving in the United States and having the wearing apparel and articles of personal adornment and personal effects resides in the United States, and is on a journey to and in the country with the intention of returning to a foreign land, and whether the things he brings with him are necessary and convenient for the immediate purposes of his journey and the comfort of the person himself while in the United States. If there were any doubt that this is the correct interpretation, confirmation is found in the proviso, where the emphatic use of the words "residents of the United States returning from abroad" at once contrast the cases of such persons with those of others meant to be described in the unrestricted antecedent language. It follows that persons who are residents, being those who are specially excepted by the proviso, "persons arriving" generally provided for and not excepted must be nonresidents; that is, persons who, without regard to legal citizenship, are in good faith living and making their homes abroad with no intention of returning to live in the United States. In United States *v.* One Pearl Necklace (111 Fed. Rep., 164), cited by appellee, the court of appeals of the second circuit referred to the exemptions of a similar statute as made according to citizenship, but we hardly think that the word "citizen" was used by the court in a sense of distinction from the word "resident." The court was explaining the status of the foreigner and the resident without necessity for decision as to the exact meaning of the word "resident."

Passing to the evidence, we are of opinion that the appellant has sustained the burden of proving that when he arrived in the United States he was not a resident of this country. He had been abroad practically the whole of his life, had maintained a household and claimed his residence there, had paid income taxes in England, had never claimed the right to vote in the United States, and appears to have had no intention of remaining herein when he arrived at New York in October, 1909. His story is direct, without evasion, and wholly consistent with the claim that though a citizen of the United States he was a bona fide resident of England, coming to the United States merely to visit or attend to business matters for his father, who had for years been also a resident of Great Britain. The fact that, some two months after his arrival in New York, owing to circumstances he changed his plans and concluded to remain and to become a resident of the United States does not affect the case, except in so far as such facts may bear upon the probability of the truth of the statement of the appellant that he was a resident of England and had no intention of remaining in the United States when he arrived. We grant that if the acts of appellant subsequent to his arrival had been accompanied by circumstances which tended to show that

remaining was but the execution of an intent to remain which existed in his mind at the time of his arrival, then it could be said that appellant was not only not a nonresident at the time of his arrival, but was guilty of perjury in his statements before the Board ·of General Appraisers as well as of a fraud upon the laws of the United States. But aside from the fact itself that appellant had gone into business, coupled with his statement that after his arrival he had concluded to remain in the United States, there is nothing which tends in the least to affect the reasonableness and apparent truth of his statements concerning his nonresidence, and intention to return, when he arrived. And it is the intention at that time, and what his residence was when he arrived, that become the crucial points involved.

We do not overlook the importance and necessity for customs officials to search for external facts by which they may gather the intent of those who claim to be nonresident travelers, entitled to the exemptions of the statute under consideration, for doubtless it is only by extreme vigilance that fraud is prevented. On the other hand, a witness is presumably truthful, and if upon the uncontradicted external facts, themselves not unreasonable or incompatible with strict honesty of conduct, the only deduction which is consonant with such presumption is in favor of the person arriving, it becomes the duty of the courts to sustain his statement rather than to discredit it.

*Reversed.*