STERN BROS. *v.* UNITED STATES (No. 660).[1]

APPRAISEMENT OF MERCHANDISE NOT IN PUBLIC STORES.

The leather bags of the importation in question were contained in cases that were not sent to the public stores for examination. The importer's contention is that the bags did not contain toilet articles, but were assessed for duty as if they did contain them. The goods having gone into consumption and the veracity of the witness who testified being unquestioned, it was sufficient proof of the actual character of the leather bags, when there was produced and submitted by the importer a memorandum known as a "stock list" that contained a complete and accurate description of the articles in question, with the cost and sale prices thereof. It was not necessary to corroborate this testimony by offering samples of the merchandise. The goods were dutiable at 40 per cent ad valorem under paragraph 452, tariff act of 1909. Bradley Martin *v.* United States (1 Ct. Cust. Appls., 134; T. D. 31185); United States *v.* Hermann (154 Fed. Rep., 196).

United States Court of Customs Appeals, January 11, 1912.

APPEAL from Board of United States General Appraisers, Abstract 25070 (T. D. 31405).

[Reversed.]

*Comstock & Washburn* (*Albert H. Washburn* and *Geo. J. Puckhafer* of counsel) for appellants.

*Wm. L. Wemple,* Assistant Attorney General (*Chas. Duane Baker* on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

DE VRIES, Judge, delivered the opinion of the court:

This is an appeal from a decision of the Board of General Appraisers, and brings here for review a question of evidence. The merchandise

---

[1] Reported in T. D. 32167 (22 Treas. Dec., 65).

was ladies' hand bags, some of which were fitted with toilet bottles, others not.

On arrival of the importation at the port of New York the proper number of cases under section 2901 of the Revised Statutes were by the collector, as therein required, designated for examination by the appraiser. The appraiser duly examined these cases and packages, made his return to the collector, and duty was assessed upon the entire invoice, or at least the articles the subject of this controversy, at 50 per cent ad valorem under the provision of paragraph 452 of the tariff act of 1909, levying duty upon "cases of leather fitted with toilet articles."

The contention of the importer, who is appellant here, upon which chief reliance is made, is based upon the allegation that these bags did not contain toilet articles, and were therefore dutiable at the rate of but 40 per cent ad valorem under the same provision. The Board of General Appraisers overruled the protest.

The record develops the fact that the merchandise in question was contained in cases which were not sent to the public stores for examination, and were not before the appraiser for examination and return. The board states:

> The only proof submitted is the statement of the person who bought the merchandise for protestants. She stated that all of the bags represented by the item numbers claimed upon had been sold and that therefore no sample could be produced, but she gave in detail a description thereof from a memorandum made at the time of importation. The Government offered no evidence and did not even cross-examine the witness, but nevertheless the board is not satisfied that the proof offered is sufficient to justify a reversal of the collector's action. Protestants had knowledge that case 3958, containing the bags in controversy, had not been designated for examination and was not therefore before the appraiser. If, then, with such knowledge, they failed to retain and present on the trial of the same representative samples thereof so that counsel for the Government might have the benefit of examination thereof and the opportunity, if desired, to present proof in contravention of witness's statement or in support of the collector's action, they have failed to meet the burden which rested upon them. To hold otherwise might result in a procedure which would place the Government in many instances at the mercy of unscrupulous importers.

The record discloses, as stated in the opinion of the board, that the buyer of the importing firm testified that she was familiar with the foreign invoices of the importing firm and the goods covered by them; that she saw the particular case when it arrived in the store; that she there and then made a memorandum of the kind of goods included therein, describing particularly each bag upon the invoice; that was the usual course of business of the house, and that she made a similar description of all of the goods in this line received by the importing firm. The memorandum was then produced and received in evidence. It is entitled "stock list," and it gives a detailed description, as stated by the witness, of every number included upon the invoice, as well as the invoice number, the cost price, and the selling price of each article of the merchandise. It is a list used by the importing firm in

the ordinary course of business in the selling of the goods; the descriptions therein made, in other words, are the basis of its purchases, sales, and profits. It bears internal evidence, not alone for these reasons, but by reason of the complete and accurate description of the imported articles that a close examination of each was made and an accurate description there registered. The cost prices are in letters, the sale prices in figures. It is such a document as would furnish upon cross-examination abundant evidence to test the correctness of the witness's testimony by comparing the cost prices upon the sale list with the cost prices upon the invoices and other corresponding descriptions of the merchandise. It is admitted that the goods have gone into consumption. The integrity of the witness is not questioned by Government counsel or the board. There is no finding by the Board of General Appraisers that the testimony of the witness did not impress the board or was not truthful.

The decision of the board is rested expressly upon the proposition that in such cases it is the duty of the importing firm to produce samples in court corroborative of their testimony, and that only this method will avoid against fraud by unscrupulous importers. We think this holding error. It reads into the law a condition precedent which is not only unwarranted by the law, but which imposes a condition upon importers which may prove absolutely destructive of business.

The question sought to be established by the importing firm is one surrounded by the statutes with no other limitations than the proof of any ordinary fact at issue. In many respects it is not dissimilar to the case of Bradley Martin *v.* United States (1 Ct. Cust. Appls., 134; T. D. 31185), decided by this court, wherein we said:

On the other hand, a witness is presumably truthful, and, if upon the uncontradicted external facts, themselves not unreasonable or incompatible with strict honesty of conduct, the only deduction which is consonant with such presumption is in favor of the person arriving, it becomes the duty of the courts to sustain his statement rather than to discredit it.

More properly in point is the decision of United States *v.* Hermann (154 Fed. Rep., 196), wherein the Circuit Court of Appeals, Second Circuit, in a similar case said:

Actual samples were not produced, and this evidence was based on the recollection of the witnesses as to the character of the goods represented by the invoice description of the various items, which had been imported two years or more previously. The Government urged that, in view of the failure of the importers to produce samples of the goods and the fact that the testimony of the importers was based on an inspection of the invoices, there was no competent evidence to sustain the conclusion of the Circuit Court.

The appellate court affirmed the decision of the Circuit Court without opinion over the contention of the Government in that case.

As no exceptional statutory requirements have been prescribed by the Congress in such cases as these, we must assume that it was not the intention of the legislative body to do so, and that the prescription of such a requirement is without warrant of law. Indeed, we

are unable to follow the principle to the conclusion that such a rule is necessary to obviate fraud upon the part of unscrupulous importers. We think such a rule would add no additional safeguard to the Treasury.

If the statutory or prescribed evidence necessary to establish the importer's case was that samples of the imported merchandise be produced, it would be far less difficult for the importer to produce at the hearing from his stock of merchandise or from samples held for that very purpose, samples fitting the case and testify that they were representative of the importation. The facility of that method would be so much easier of accomplishment, and the method and result so much more difficult of successful contravention on behalf of the Government than was the case here presented, that we are inclined to believe that it would open wider the door to fraud than is here presented. In this case there was not only the uncontradicted testimony of the witness who purchased the goods, but there is tangible evidence in the form of a written memorandum made at the time which contains in connection with the parol evidence sufficient elements of its integrity that it would be easy to test the same by the invoices and other records in the particular case. The Government tacitly accepted the authenticity of these by not opposing their introduction and not cross-examining the witness. The board likewise does not question the verity of either.

We are of the opinion that upon the unquestioned proof made the importer was entitled to a decision.

*Reversed.*