COLUMBIA PHONOGRAPH CO. *v.* UNITED STATES (No. 3970)

United States Court of Customs and Patent Appeals, June 17, 1936

*Lawrence & Tuttle* (*Frank L. Lawrence* of counsel) for appellant.

*Joseph R. Jackson*, Assistant Attorney General (*Richard E. FitzGibbon*, special attorney, of counsel), for the United States.

[1] T. D. 48417.

[Oral argument April 7, 1936, by Mr. Tuttle and Mr. Jackson]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court.

Merchandise consisting of disks of soft wax commonly known as master records, imported from China for use in the manufacture of sound records for export purposes, was accorded free entry under paragraph 1694 of the Tariff Act of 1922, which reads:

PAR. 1694. Disks of soft wax, commonly known as master records, or metal matrices obtained therefrom, for use in the manufacture of sound records for export purposes.

Sometime after the importation, the importer informed the collector that the particular soft wax disks here in question were used in the production of approximately 109,000 sound records, of which 22,471 were sold in the United States, and the remainder exported.

Upon the receipt of that information, the Collector of Customs at the port of New York reliquidated the entries, and assessed the imported master records as manufactures of wax at 20 per centum ad valorem under the provisions of paragraph 1438 of the Tariff Act of 1922, which reads:

PAR. 1438. Manufactures of amber, bladders, or wax, or of which these substances or any of them is the component material of chief value, not specially provided for, 20 per cent ad valorem.

The importer protested, claiming that the merchandise was free of duty under paragraph 1694, in accordance with the original decision of the collector.

In overruling the protests, and holding the merchandise to be properly dutiable as assessed by the collector, the United States Customs Court, in an exhaustive opinion by Presiding Judge McClelland, said:

It is a notable fact that in paragraph 1694, *supra*, there is no special provision authorizing the Secretary of the Treasury to make regulations requiring any more from the importer of wax disks known as master records than a statement of the fact that such records were imported for use in the manufacture of sound records for export purposes, and there is nothing before us to indicate that at the times when these several entries were made the importer had any other purpose but to use the master records for the purpose of manufacturing sound records for export. We think it evident that the determination on the part of the importing company to change its purpose and to manufacture some records for home consumption in the United States was the equivalent of a change of mind.

In support of its claim plaintiff cites *United States* v. *196 Mares*, 29 Fed. 139. In that case it appears that the importer made arrangements to export to the United States certain mares, horses, and mules, and procured the necessary papers certifying that the mares were being imported for breeding purposes.

After importation of the animals the customs officers learned that the mares were really intended to be placed on the market and sold wherever an opportunity presented itself. Following this information the mares were seized on the ground of fraud, and the most that can be said of the language of Judge Turner is that he determined to submit the question of the *bona fide* intention on the part of the claimant to import the mares for breeding purposes to the jury to determine whether there was fraudulent intent in entering the mares as he did to avoid the payment of duty. It can well be imagined that the elimination of the question of fraud would not necessarily determine the question of whether, in view of the fact that the mares were not actually imported for breeding purposes but were sold generally after importation, they were not still subject to duty although the fraud element was removed. We do not therefore think there is anything in the language of Judge Turner's opinion (which apparently was in the nature of an address to a jury) that is controlling in the determination of this issue.

Another authority relied upon was *Dillingham* v. *United States*, T. D. 43957, involving the dutiable status of a bull imported from Canada into the United States at the port of Ogdensburg, N. Y., concededly for breeding purposes, but which had, upon inspection by the farmer for whom it had been imported, been found to be too large and too ugly and unsafe to take to his farm because he had two small boys. Following such refusal and about a week or ten days after importation the importer sold the bull to a butcher for beef purposes. On that showing Judge Young sustained the protest, holding that the collector's assessment of duty at the rate of 2 cents per pound under paragraph 701 of the Tariff Act of 1922 was without warrant in law since—

it is the condition of the property when imported, its status at that time, that governs the classification.

In our view there is no parallel between the issue raised by the collector's assessment of duty on that bull and the situation here presented, and we are therefore constrained to disregard it as an authority in the decision of the issue here presented. As to the other remaining two authorities cited by plaintiff's counsel (*Martin* v. *United States*, 1 Ct. Cust. Appls. 134, T. D. 31185, and *Acker* v. *United States*, id. 404, T. D. 31481), we are convinced that neither of them is tenable and therefore do not merit any consideration here.

In a more recent case, that of *Loewenstein* v. *United States*, T. D. 46759, involving sixteen dozen kidskins made into leather, part of an importation of 96 dozen kidskins which were permitted entry at the rate of 10 per centum ad valorem under the provisions of paragraph 1530 (c) of the Tariff Act of 1930 by reason of an affidavit filed with the entry papers that such skins were to be used in the manufacture of boots, shoes, or other footwear, it developed on the trial of the issue that eighty dozen of such skins were actually used in the manufacture of boots, shoes, or other footwear, and that the remaining sixteen dozen were exported in the same condition as when imported. The collector had on liquidating the entry assessed duty on the 80 dozen skins at 10 per centum ad valorem and at 25 per centum ad valorem on the sixteen dozen skins that were so exported. Against the assessment of the 25 per centum duty on the sixteen dozen skins the importer protested, claiming that the intent at the time of importation was the controlling factor and that actual use was not required to be shown in order to entitle the merchandise to assessment at 10 per centum.

This court overruled the protest claim and affirmed the action of the collector (*Loewenstein* v. *United States*, T. D. 46759). From the decision of this court an appeal was taken to the Court of Customs and Patent Appeals (*Loewenstein* v. *United States*, 22 C. C. P. A. 433, T. D. 47425). In affirming the decision of

this court, Judge Bland, writing the unanimous opinion of the appellate court, among other things said:

> The contentions of appellant lead to the conclusion that as long as the importer intends, at the time of importation, to sell his goods for shoe-making purposes, it does not make any difference if he changes his mind the next day and sells them for a wholly different purpose. Surely Congress could not have contemplated a result which might lead to unlimited fraud against the revenues and which might defeat the very purpose of the 25 per centum duty and not further the purpose of the lower-duty provision.

While there is no room for implication of fraudulent intent in the importation and entry of these disks free of duty under paragraph 1694, *supra*, or reason to doubt the good faith of the importer, the quoted language from the decision of the appellate court is pertinent in that under other circumstances other importations of disks might be imported on the statement that they were to be used for making sound records for export and yet after importation they might, by reason of a change of mind on the part of the importer, be used wholly for the manufacture of records for home consumption, notwithstanding that if they had been entered without any statement that they were to be used in the manufacture of records for export there would be no question of their being subject to duty.

On the authority of the decision last cited the protest at bar is overruled and the decision of the collector is affirmed.

In this court, counsel for appellant contend that as it was the intention of the importer prior to, and at the time of, importation to use the imported articles for the purposes provided in paragraph 1694, that is, for use in the manufacture of sound records for export purposes, and as they were used chiefly for such purposes, the court below erred in overruling the protests.

There is nothing whatsoever in the statute, the record, or the legislative history to indicate that merchandise such as that here involved has any use other than in the manufacture of metal matrices and sound records.

Counsel for appellant argue that the involved and like merchandise is entitled to free entry under paragraph 1694, *supra*, if imported for use in the manufacture of sound records *chiefly* for export purposes, and, in order to make their argument effective, find it necessary to construe the statute as though it read, "Master records for use in the manufacture of sound records: For export, free; for domestic use, 20 per centum," and then, in order that the supposititious statute may be properly construed, apply the doctrine of chief use.

The argument is ingenious, but, in our opinion, fallacious. It is obviously necessary that the statute be rewritten in some form or other in order that the doctrine of chief use may be applied. Had the Congress intended that the involved and like merchandise should be free of duty when used in the manufacture of sound records *chiefly* for export purposes, it would have been an easy matter for it to have said so. We find nothing whatsoever in the statute, or in the legislative history, which even remotely suggests such an intention on the part of the Congress. The statute is perfectly clear and unambiguous, and requires no construction.

Relative to the first contention urged by counsel for appellant, that is, that the intention of the importer prior to, and at the time of, the importation fixed the tariff status of the involved merchandise, we need but refer to the decision of the Customs Court, which precisely states our views.

We are in entire accord with the conclusion reached by the trial court, and its judgment is *affirmed*.