BEFORE THE SECOND DIVISION, NOVEMBER 16, 1938

**No. 39870.**—Protest 748154–G of Bullocks, Inc. (Los Angeles).

TILSON, Judge: This suit was filed by the plaintiff seeking to recover a certain sum of money claimed to have been unlawfully exacted as customs duties on

imported merchandise. Duty was levied on the merchandise at 90 percent under paragraph 1529 (a) of the Tariff Act of 1930, and the plaintiff claims the same to be properly dutiable at 40 percent ad valorem under paragraph 923 of the same act as manufactures of cotton, not specially provided for.

But one witness testified at the trial, and her entire testimony was directed to establishing that the merchandise was made by hand rather than by machine. The merchandise consists of what the witness described as "fish net," a sample thereof Exhibit 1, being in evidence, which has had our careful inspection and examination. There is also in evidence before us a sample, Illustrative Exhibit B. of what the witness described as machine-made net, called "imitation fish net."

The witness who testified in this case had had ten years' experience in the curtain department and fifteen years' experience in the lace department of a large department store in Los Angeles, where she had sold hand-made and machine-made laces and had purchased hand-made and machine-made nets. The witness had also had personal experience in making hand-made nets, and had made nets identical to the nets in this case. She also testified that the characteristic about the merchandise in this case which indicates that it is hand made is "The knot itself is originally a fisherman's knot, and *only could that be made by hand*," and that she had never seen a machine-made net that had a knot similar to the knot in the net in this case.

This witness gave as the distinguishing characteristics between Illustrative Exhibit B, the net made on a machine, and Exhibit 1, the following:

Illustrative Exhibit B is a thread, criss-crossed by machine and woven, to attach them together, but there is not a knot. In Exhibit 1 each square has a hand knot tied, which cannot slip, while you will find that in Illustrative Exhibit B it will slip because it hasn't the knot.

An examination of the two exhibits confirms the witness' testimony as to the distinguishing characteristics between the two. The witness testified positively on cross-examination that Illustrative Exhibit B was a machine-made net and gave her reasons therefor.

It may be true that this witness did not possess the highest qualifications for the statements she made, and that her testimony might not be the strongest and most conclusive that could have been produced, but standing as it does without contradiction, we feel, and so hold, that it is sufficient to establish, at least, a *prima facie* case for the plaintiff. If any of the statements made by this witness were untrue, the defendant had ample opportunity to rebut the same. No rebuttal testimony having been offered, we accept the statements of this witness as sufficient to establish a *prima facie* case for the plaintiff that the nets in this case were made by hand and were not made on a machine.

In the case of *Bradley Martin, Jr.* v. *United States*, 1 Ct. Cust. Appls. 134, T. D. 31185, the appellate court said:

A witness is presumably truthful, and if upon the uncontradicted external facts, themselves not unreasonable or incompatible with strict honesty of conduct, the only deduction which is consonant with such presumption is in favor of the person arriving, it becomes the duty of the courts to sustain his statement rather than to discredit it.

See also *Stern Bros.* v. *United States*, 2 Ct. Cust. Appls. 405, T. D. 32167, and *Schmitt* v. *United States*, 5 Ct. Cust. Appls. 312, T. D. 34523.

The pertinent part of said paragraph 1529 (a) reads as follows:

Laces, lace fabrics, and lace articles, made by hand or on a lace, net, knitting, or braiding machine, and all fabrics and articles made on a lace or net machine, all the foregoing, plain or figured; * * *.

Paragraph 1430 of the Tariff Act of 1922 contained an *eo nomine* provision for "nets and nettings, embroidered or otherwise," but, as will be seen from the

above quotation, said paragraph 1529 (a) does not contain an *eo nomine* provision for nets of any kind, but, so far as nets are concerned, said paragraph contains only a provision for "fabrics and articles made on a * * * net machine." Since it has been established that the net in this case was made entirely by hand, it is at once apparent that it is not covered by the provision for fabrics and articles made on a net machine. Said paragraph 1529 (a) contains no provision for nets made entirely by hand. For nets of any kind to be dutiable under said paragraph 1529 (a) they must be fabrics and articles made on a net machine.

However strong might have been the intention of Congress to include such net articles as those in this case within the provision for "Laces, lace fabrics, and lace articles," there is nothing in the record before us which indicates such intention, nor have we been able to discover such intention from an examination of the statute and such documents and treatises on the subject as to which we are permitted to take judicial cognizance. To hold that the provision for "Laces, lace fabrics, and lace articles," covers and includes such net articles as those at bar would be to nullify and render inoperative the provision in said paragraph for "fabrics and articles made on a * * * net machine." This we decline to do.

In said paragraph 1529 (a) the Congress has, in clear, plain, and unambiguous language, specifically provided for "fabrics or articles made on a lace or net machine." We find no language which more forcefully expresses our views on this subject than the following used by the Supreme Court of the United States in the case of *Lake County* v. *Rollins*, 130 U. S. 662, 32 L. ed. 1060:

The language of the sixth section seems to be neither complicated nor doubtful; and we think it plain that what is meant is exactly what is said; no more and no less.

* * * * * * *

Why not assume that the framers of the Constitution and the people who voted it into existence, meant exactly what it says? At the first glance, its reading produces no impression of doubt as to the meaning. It seems all sufficiently plain; and in such case there is a well settled rule which we must observe. The object of construction applied to a Constitution, is to give effect to the intent of its framers, and of the people in adopting it. *This intent is to be found in the instrument itself; and when the text of a constitutional provision is not ambiguous the courts, in giving construction thereto, are not at liberty to search for its meaning beyond the instrument.*

To get at the thought or meaning expressed in a statute, a contract, or a Constitution the first resort, in all cases, is to the natural signification of the words in the order of grammatical arrangement in which the framers of the instrument have placed them. If the words convey a definite meaning, which involves no absurdity nor any contradiction of the other parts of the instrument, then that meaning apparent on the face of the instrument, must be accepted, and neither the courts nor the legislature have the right to add to it or take from it.

* * * * * * *

*So, also, where a law is expressed in plain and unambiguous terms, whether those terms are general or limited, the Legislature should be intended to mean what they have plainly expressed, and consequently no room is left for construction.* United States v. Fisher, 6 U. S. 2 Cranch 358, 399 (2:304:317); Doggett v. Florida R. Co., 99 U. S. 72 (25:301). [Italics ours.]

To the same effect is the case of *Crooks* v. *Harrelson*, 282 U. S. 55, decided by the Supreme Court of the United States, from which we quote the following:

Courts have sometimes exercised a high degree of ingenuity in the effort to find justification for wrenching from the words of a statute a meaning which literally they did not bear in order to escape consequences thought to be absurd or to entail great hardship. But an application of the principle so nearly approaches the boundary between the exercise of the judicial power and that of the legislative power as to call rather for great caution and circumspection in order to avoid usurpation of the latter. *Monson* v. *Chester*, 22 Pick. 385, 387. It is not enough merely that hard and objectionable or absurd consequences, which probably were

not within the contemplation of the framers, are produced by an act of legislation. Laws enacted with good intention, when put to the test, frequently, and to the surprise of the lawmaker himself, turn out to be mischievous, absurd, or otherwise objectionable. But in such case the remedy lies with the lawmaking authority, and not with the courts.

So, in this case, we prefer to stand on the sound principles announced by the Supreme Court of the United States in the two cases above quoted, and ascribe to the Congress the intention of meaning exactly what they have plainly expressed in the statute under consideration, rather than try to wrench from the words of that statute a meaning which literally they do not bear. We therefore hold that the provision in said paragraph 1529 (a) for "Laces, lace fabrics, and lace articles" does not cover or include nets in chief value of cotton made entirely by hand.

The merchandise in this case being excluded from the provisions of said paragraph 1529 (a), and not being elsewhere specifically provided for, would appear to be dutiable as manufactures of cotton, not specially provided for, under paragraph 923 of said act, as claimed by the plaintiff.

For the reasons stated we hold all the merchandise enumerated upon the second page of the invoice to be properly dutiable at 40 per cent ad valorem under paragraph 923 of the Tariff Act of 1930, as claimed by the plaintiff.

To the extent indicated the specified claim in this suit is sustained; in all other respects and as to all other merchandise all the claims are overruled. Judgment will be rendered accordingly.