**GLOBEMASTER, INC.**

v.

**UNITED STATES.**

C.D. 4340; Court No. 71-3-00003, against the decision of the district director of customs at the port of Houston.

United States Customs Court.

March 8, 1972.

———◆———

B. Jeff Bratton, Houston, Tex., for plaintiff.

L. Patrick Gray, III, Asst. Atty. Gen. (Robert Blanc, New York City, on brief), for defendant.

RE, Judge:

These are cross-motions for judgment on the pleadings pursuant to Rule 4.9 of the rules of this court. The legal question presented is of great moment in the administration of the tariff laws of the United States.

The material facts as pleaded are not in dispute. The merchandise consists of plastic covers for plier handles. After importation from Spain, the articles were delivered to plaintiff's premises under an immediate delivery permit. Inspection there by customs officers revealed that the merchandise was not marked with the country of origin as required by 19 U.S.C. § 1304. The district director of customs demanded the surrender of the package under the authority of 19 C.F. R. § 11.11(a).[1] Following compliance with this order, plaintiff tendered a check representing marking duties of 10 per centum ad valorem allegedly provided for in lieu of marking in 19 U.S.C. § 1304(c). In addition, the plaintiff requested the release of the merchandise from customs custody. Timely protest followed the denial of this request.

The substantive question presented is whether the importer may be relieved of the requirement of marking the country of origin by payment of the 10 per centum additional duty provided for in 19 U.S.C. § 1304, and yet still receive his merchandise.

The pertinent portion of § 1304 reads as follows:

"(c) *Additional duties for failure to mark.*

If at the time of importation any article (or its container, as provided in subsection (b) of this section) is

1. "§ 11.11 *Disposition of articles not prop-* under customs supervision."
    (a) The appraiser, acting for the collector, shall notify the importer on customs Form 4647 to arrange with the collector's office to properly mark the articles or containers found upon examination not

to be legally marked, or to return the unexamined packages to customs custody for exportation, or destruction. Such marking, exportation, or destruction shall be at the expense of the importer and *erly marked.*

not marked in accordance with the requirements of this section, and if such article is not exported or destroyed or the article (or its container, as provided in subsection (b) of this section) marked after importation in accordance with the requirements of this section (such exportation, destruction, or marking to be accomplished under customs supervision prior to the liquidation of the entry covering the article, and to be allowed whether or not the article has remained in continuous customs custody), there shall be levied, collected, and paid upon such article a duty of 10 per centum ad valorem, which shall be deemed to have accrued at the time of importation, shall not be construed to be penal, and shall not be remitted wholly or in part nor shall payment thereof be avoidable for any cause. Such duty shall be levied, collected, and paid in addition to any other duty imposed by law and whether or not the article is exempt from the payment of ordinary customs duties. The compensation and expenses of customs officers and employees assigned to supervise the exportation, destruction, or marking to exempt articles from the application of the duty provided for in this subsection shall be reimbursed to the Government by the importer.

### "(d) *Delivery withheld until marked.*

No imported article held in customs custody for inspection, examination, or appraisement shall be delivered until such article and every other article of the importation (or their containers), whether or not released from customs custody, shall have been marked in accordance with the requirements of this section or until the amount of duty estimated to be payable under subsection (c) of this section has been deposited. Nothing in this section shall be construed as excepting any article (or its container) from the particular requirements of marking provided for in any other provision of law."

The purpose of the marking provisions was explored by the Court of Customs and Patent Appeals in United States v. Friedlaender & Co., Inc., 27 CCPA 297, C.A.D. 104 (1940). In the *Friedlaender & Co.* case the issue was whether Czechoslovakia or Germany was the "country of origin" within the intendment of the marking statute. Specifically, the legal question pertained to "the legal marking of imported merchandise wholly manufactured in a country [Sudeten area of Czechoslovakia] which became an integral part of another country [Germany] before exportation." The Court of Customs and Patent Appeals held that Germany was the "country of origin" since that was the country from which the merchandise "started on its journey to the United States."[2] It noted the importance of the proper marking of the goods by emphasizing that a "purchaser might refuse to buy German goods but might be perfectly willing to purchase Czechoslovakian goods * * *." It further observed that "by reason of the mark [a purchaser] would be deceived in buying as the product of one country the product of another which he did not want." 27 CCPA at 303.

As stated in the *Friedlaender & Co.* case, by the statutory provision pertaining to marking:

" * * * Congress intended that the ultimate purchaser should be able to know by an inspection of the marking on imported goods the country of which the goods is (sic) the product. The evident purpose is to mark the goods so that at the time of purchase the ultimate purchaser may, by knowing where the goods were produced, be able to buy or refuse to buy them, if

---

2. Friedlaender & Co., Inc. v. United States, 2 Cust.Ct. 406, 414, C.D. 166 (1939), quoted in 27 CCPA at 303. The Court of Customs and Patent Appeals reversed the Customs Court and adopted as proper "the construction of the expression [country of origin] as contained in the dissenting opinion." *Ibid.*

such marking should influence his will." 27 CCPA at 302. (Cited with approval in U. S. Wolfson Bros. Corp. v. United States, 52 CCPA 46, 49, C. A.D. 856 (1965).) See also Basis for a Report to Accompany the Proposed Tariff Act of 1929 (H.R. 2667), 71st Cong., 1st Sess. 153 (Confidential Comm. Print 1929).

■ There can be no doubt that the pertinent legislation reflects the Congressional intent that the public be apprised of the country of origin of merchandise. It was the legislative purpose to enable the "ultimate purchaser" of the goods to decide for himself whether he would "buy or refuse to buy them." Congress was also aware of the fact that many consumers prefer merchandise produced in this country, and sought " * * * to confer an advantage on domestic producers of competing goods." United States v. Ury, 106 F.2d 28, 29 (2d Cir. 1939). It would seem clear that plaintiff's contention, that § 1304 provides the importer with the option either to mark his goods with the country of origin or to pay an additional duty of 10 percent, if accepted, would defeat the very purpose of that section.

The first provision in our tariff laws for the marking of merchandise as to country of origin was contained in the Tariff Act of 1890. It provided that " * * * unless [the articles are] so marked, stamped, branded, or labeled they shall not be admitted to entry." 26 Stat. 613, § 6. Equally mandatory and unconditional language was employed in subsequent amendments. The Tariff Acts of 1894 and 1897 provided that " * * * until [the articles are] so marked, stamped, branded, or labeled they shall not be delivered to the importer * * *." 28 Stat. 547, § 5; 30 Stat. 206, § 8. Similar non-delivery provisions were contained in the Tariff Acts of 1909 and 1913. 36 Stat. 85, § 7, 38 Stat. 194, par. F, Subsec. 1.

A major change in marking policy was introduced in the Tariff Act of 1922, 42 Stat. 858, § 304. In addition to the mandatory marking provisions al-ready firmly established in the body of the tariff law, a proposed amendment, later enacted, became the forerunner of the provision pertinent in the case at bar. This amendment provided that: " * * * unless the article is exported, there shall be levied, in addition to the regular duty, a duty of 10 percent, or, if the article is free of duty, a duty of 10 percent is imposed; [a further provision as to articles in customs' custody was made] * * * in order to prevent any delivery until the article is properly marked." Conference Report on the Tariff Bill of 1922, H.R.Rep.No.1223, 67th Cong., 2d Sess. 144 (1922).

By 1922, a customs practice had been established of taking an examination package, and permitting the importer to accept immediate delivery of the rest of the merchandise upon the posting of a bond guaranteeing redelivery if requested. Rev.Stat. § 2899 (1875), 19 U.S.C. § 1499; Customs Regulations Arts. 451, 986–7 (Customs Form 3373) (1915 ed.). See also Hearings on H.R. 8099 before a Subcommittee of the Senate Committee on Finance, 75th Cong., 3d Sess. 38 (1938). Consequently, the new Act provided that the examination package " * * * shall not be delivered * * * until every package of the importation which shall have been released from customs custody not so marked * * * shall be marked * * *." 42 Stat. 936, § 304(a).

It cannot be doubted that at this point in the development of the statute, there was no intention to provide the importer with an option either to mark or pay increased duties. The Congressional intent was clear and unmistakable: all goods were to be marked before delivery to the importer, and, if not marked at the time of importation, the additional duties as well as the marking requirement would apply. Where release of the merchandise was effected under bond, the examination package could not be released unless every article of the importation was marked, whether or not previously released.

The Tariff Act of 1930 made no drastic change in provisions here relevant, but did provide that "nothing in this subdivision shall be construed to relieve from the requirements of any provision of this Act relating to the marking of particular articles or their containers." 46 Stat. 687, § 304(c). See Basis for a Report to Accompany the Proposed Tariff Act of 1929 (H.R. 2667), 71st Cong., 1st Sess. 153 (Confidential Comm.Print 1929).

The particular statutory language presently at issue is found in the Customs Administrative Act of 1938. Section 304(c) of that Act [now 19 U.S.C. § 1304(c)] provided that where goods were imported improperly marked or unmarked, the additional duty could be avoided by correctly marking before liquidation under customs supervision. 52 Stat. 1077–1079. The statute also provided:

"(d) *Delivery withheld until marked.*—No imported article held in customs custody for inspection, examination, or appraisement shall be delivered until such article and every other article of the importation (or their containers), whether or not released from customs custody, shall have been marked in accordance with the requirements of this section or until the amount of duty estimated to be payable under subsection (c) of this section has been deposited. Nothing in this section shall be construed as excepting any article (or its container) from the particular requirements of marking provided for in any other provision of law."

The plaintiff herein contends that this language gives the importer the choice of either marking the imported merchandise or paying the additional duties. This contention would appear to have merit only if one were to ignore the existing importing practice and the pertinent legislative history of the statutory provision.

The managers of the bill for the House of Representatives explained the eventual language of the Act as follows:

"* * * The Senate amendment adds a provision to authorize the release of the articles in examination packages if estimated marking duty on the unmarked articles is deposited. This will cover cases where articles released from customs custody cannot be recovered for proper marking and will not interfere with the collection of penalties under entry bonds for failure to redeliver the released goods where the importer has not been diligent to secure proper marking * * *." H.R.Rep.No.2677, 75th Cong., 3d Sess. 6 (1938).

The importing practice casts considerable light upon the meaning of the statute. When merchandise is brought into this country, the goods, less an examination package, may be immediately delivered to the importer's premises upon the posting of a bond. 19 U.S.C. § 1499. 19 C.F.R. § 25.4(a)(9). If the sample is discovered to be incorrectly marked or unmarked, the goods must be marked or returned to customs custody for marking, exportation, or destruction. 19 U.S.C. § 1304(c); 19 C.F.R. § 11.11(a). If the released goods have already been passed on to the consumer, the new language of § 1304(d) becomes relevant. Whereas under previous law, the failure to return released goods upon request would result in the forfeiture of the goods retained by customs, the pertinent 1938 amendment granted relief. The examination package may be recovered, after itself being marked, in spite of the nondelivery of the released goods upon the deposit of the 10 percent additional duty estimated to be payable under § 1304(c). This recovery, however, does not affect the forfeiture of the entry bond and the payment of any other applicable duties or penalties. 19 C.F.R. § 25.17(d); H.R.Rep.No.2677, 75th Cong., 3d Sess. 6 (1938).

The pertinent legislative history, therefore, has led the court to conclude that Congress provided that the statutory marking provisions are mandatory and afford the importer no option or choice. H.R.Rep.No.1429, 75th Cong.,

1st Sess. 2 (1937); S.Rep.No.1465, 75th Cong., 3d Sess. 7 (1938). As stated by Judge Nichols in dictum, writing for the United States Court of Customs and Patent Appeals, ". . . an importer *who pays the duty [for not marking] cannot thereby obtain the right to import without marking.*" United States, (Ralph Valls, Party-in-Interest) v. Hammond Lead Products, Inc., 440 F.2d 1024, 1029, 58 CCPA 129, C.A.D. 1017 (1971).

For the foregoing reasons, defendant's motion for judgment on the pleadings is granted, and plaintiff's complaint, having no merit, the action is hereby dismissed. Judgment will be entered accordingly.

### ORDER AND JUDGMENT

Defendant having moved this court for an order granting judgment on the pleadings, and plaintiff having cross moved for such relief in its favor, and said motions having been orally argued, and upon all the pleadings and proceedings had herein, and after due deliberation, it is

Ordered, adjudged and decreed that defendant's motion be and the same hereby is granted, and that the action be and the same hereby is dismissed.