**NORCAL/CROSETTI FOODS, INC., et al., Plaintiffs,**

v.

**UNITED STATES CUSTOMS SERVICE, et al., Defendants.**

**Court No. 89–09–00495.**

United States Court of International Trade.

Feb. 12, 1990.

Titchell, Maltzman, Mark, Bass, Ohleyer & Mishel, Richard D. Maltzman, Robert Ted Parker and Richard C. Insalaco, San Francisco, Cal., for plaintiffs.

Stuart M. Gerson, Asst. Atty. Gen., Joseph I. Liebman, Attorney–in–Charge, Intern. Trade Field Office, Commercial Litigation Branch, U.S. Dept. of Justice, Washington, D.C., and Susan Burnett Mansfield, for defendants.

## MEMORANDUM OPINION AND ORDER

MUSGRAVE, Judge.

Plaintiff filed action seeking proper interpretation of 19 U.S.C. § 1304, concerning the conspicuousness of country of origin marking requirements on imported frozen vegetable packaging. The government moves to dismiss for lack of jurisdiction.

*Held:* The government's motion is denied; jurisdiction in this Court is proper under 28 U.S.C. § 1581(i)(4).

This action was originally filed in the United States District Court for the Northern District of California on February 23, 1989. The case was transferred to this Court under a stipulation of transfer on August 30, 1989.[1]

In their complaint, Norcal/Crosetti Foods, Inc., Patterson Frozen Food, Inc. and Richard A. Shaw, Inc. (hereinafter "Norcal") claim that the U.S. Customs Service ("Customs") has failed to properly ensure that packaging of imported frozen vegetables exhibits the country of origin marking in a conspicuous place, as required by 19 U.S.C. § 1304 [2] and its implementing regulation, 19 C.F.R. § 134.41(b).[3] Having

---

1. That stipulation was entered into "without waiver of any objection defendants may have to service, jurisdiction or otherwise." Defendant's Reply at 7.

2. **§ 1304. Marking of imported articles and containers**

   Except as hereinafter provided, every article of foreign origin (or its container, as provided in subsection (b) hereof) imported into the United States shall be marked in a conspicuous place as legibly, indelibly and permanently as the nature of the article (or container) will permit in such manner as to indicate to an ultimate purchaser in the United States the English name of the country of origin of the article.

3. **§ 134.41.  Methods and manner of marking.**

   (b) *Degree of permanence and visibility.* The degree of permanence should be at least sufficient to insure that in any reasonably foreseeable circumstance, the marking shall remain on the article (or its container) until it reaches the ultimate purchaser unless it is deliberately removed. The marking must survive normal distribution and store handling. *The ultimate purchaser in the United States must*

received a negative ruling from Customs concerning the adequacy of country of origin marking requirements, Norcal now seeks a determination by this Court regarding the proper interpretation of the above-referenced statute and regulation.

The government opposes jurisdiction in this Court and has moved to dismiss the action, claiming that, although plaintiffs assert this is a marking case, claims that imported merchandise are not properly marked are ultimately claims that the merchandise was not properly classified, and are thus within the province of 19 U.S.C. § 1516.[4]  Because plaintiffs have failed to exhaust their administrative remedies accompanying that code section (*see* 28 U.S.C. § 2637(b)[5]), they have not met the jurisdictional prerequisites to filing a claim with this Court.  Thus, jurisdiction in this Court under 28 U.S.C. § 1581(b)[6] is alleged to be lacking, and the action, according to the government, should be dismissed.

■  During oral argument, Norcal invoked jurisdiction in this Court under 28 U.S.C. § 1581(h), or, in the alternative, under § 1581(i)(4).  The former statute provides:

> (h) The Court of International Trade shall have exclusive jurisdiction of any civil action commenced to review, prior to the importation of the goods involved, a ruling issued by the Secretary of the Treasury, or a refusal to issue or change

such a ruling, relating to classification, valuation, rate of duty, *marking*, restricted merchandise, entry requirements, drawbacks, vessel repairs, or similar matters, but only if the party commencing the civil action demonstrates to the court that he would be irreparably harmed unless given an opportunity to obtain judicial review prior to importation.  (Emphasis supplied).

After consideration of the parties' arguments advanced in the pleadings as well as during oral arguments, the Court concludes that the government's position is erroneous.  Because jurisdiction under 28 U.S.C. § 1581(h) is lacking, this Court may take jurisdiction pursuant only to the "residual jurisdiction" of 28 U.S.C. § 1581(i)(4)[7], since the case directly relates to the proper administration and enforcement of an international trade law (marking) referred to in 28 U.S.C. § 1581(a)–(h).

Because resort to this Court's residual jurisdiction is not warranted unless one of the more specific provisions of § 1581(a)–(h) does not apply, Norcal's § 1581(h) claim must first be addressed.  As the government notes, 28 U.S.C. § 2631(h) limits the ability of prospective plaintiffs to file suit in this Court:

> (h) A civil action described in section 1581(h) of this title may be commenced in the Court of International Trade by the person who would have standing to bring

---

be able to find the marking easily and read it *without strain.*  (Emphasis supplied.)

**4.**  19 U.S.C. § 1516 provides in pertinent part:

  **§ 1516.  Petitions by domestic interested parties**
  **(a) Request for classification and rate of duty: petition**
    (1) The Secretary shall, upon written request by an interested party furnish the classification and rate of duty imposed upon designated imported merchandise of a class or kind manufactured, produced, or sold at wholesale by such interested party.  If the interested party believes that *the appraised value, the classification, or rate of duty* is not correct, it may file a petition ... (emphasis supplied).

**5.**  (b) A civil action contesting the denial of a petition under section 516 of the Tariff Act of 1930 may be commenced in the Court of Inter-

national Trade only by a person who has first exhausted the procedures set forth in such section.

**6.**  (b) The Court of International Trade shall have exclusive jurisdiction of any civil action commenced under section 516 of the Tariff Act of 1930.

**7.**  The statute reads in pertinent part:
    (i) In addition to the jurisdiction conferred upon the Court of International Trade by subsections (a)–(h) of this section and subject to the exception set forth in subsection (j) of this section, the Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for— ...
    (4) administration and enforcement with respect to the matters referred to in ... subsections (a)–(h) of this section.

a civil action under section 1581(a) of this title *if he imported the goods involved* and filed a protest which was denied, in whole or in part, under section 515 of the Tariff Act of 1930. (Emphasis added.)

The government relies on *U.S. Cane Sugar Refiners Ass'n v. United States,* 698 F.Supp. 266 (CIT 1988) to support their position that because Norcal is not an importer, plaintiffs cannot rely on § 1581(h). In that case, the Court declined to take jurisdiction because "standing ... challenging a classification ruling [8] prior to importation is limited in 28 U.S.C. § 2631(h), roughly speaking, to the prospective importer of the goods in dispute." *Id.* at 268, n. 1. Because Norcal is not an importer, 28 U.S.C. § 2631(h) would preclude invocation of 28 U.S.C. § 1581(h) as the proper jurisdictional basis, argues the government.

As the government conveniently overlooked, though, the above-cited language is contained in a *footnote* and has no precedential value. This Court is not constrained to accept dicta as controlling law.

▪ Moreover, the restrictive standing language of § 2631(h) has been broadened by Congress. Although ostensibly limited to importers, § 1581(h) can be utilized by any person *who would have standing* under § 1581(a). Thus, an examination of 19 U.S.C. § 1514(c)(1)(A)–(E), which sets forth the standing requirements for bringing an action under § 1581(a), is necessary:

(1) ... Except as provided in sections 1485(d) and 1557(b) of this title, protests may be filed with respect to merchandise which is the subject of a decision specified in subsection (a) of this section by—

(A) the importers or consignees shown on the entry papers, or their sureties;

(B) any person paying any charge or exaction;

(C) any person seeking entry or delivery;

(D) any person filing a claim for drawback; or

(E) any authorized agent of any of the persons described in clauses (A) through (D).

Thus, invocation of § 1581(a) is not limited only to importers, but allows a variety of persons involved in the disputed import transaction to file a protest.

Furthermore, when the import consists of a raw agricultural product, as do the imports in this case, Congress has allowed a broad interpretation of the term "interested party." In the government's view, 19 U.S.C. § 1516 controls the issue in this case, yet that statute provides:

Any producer of a raw agricultural product who is considered under section 1677(4)(E) of this title to be part of the industry *producing a processed agricultural product of the same class or kind as the designated imported merchandise shall,* for purposes of this section, *be treated as an interested party* producing such processed agricultural product.

19 U.S.C. § 1516(a)(3) (emphasis supplied).

In any event, resolution of the standing issue pertaining to § 1581(h) need not be decided because the refusal by Customs to issue the ruling requested by Norcal *is not a protestable event.* Those actions by Customs which can be challenged through the traditional protest route are set out in 19 U.S.C. § 1514(a)(1)–(7), which reads in pertinent part:

§ 1514. **Protests against decisions of appropriate customs officers**
(a) **Finality of decisions; return of papers**
... decisions of the appropriate customs officer, including the legality of all orders and findings entering into the same, as to—

(1) the appraised value of merchandise;

(2) the classification and rate and amount of duties chargeable;

(3) all charges or exactions of whatever character within the jurisdiction of the Secretary of the Treasury;

---

**8.** § 2631(h)'s limitation on standing applies to all of the matters listed in § 1581(h), not only classification. Marking is one of those matters.

514

(4) the exclusion of merchandise from entry or delivery or a demand for redelivery to customs custody under any provision of the customs law, except a determination appealable under section 1337 of this title;

(5) the liquidation or reliquidation of an entry, or any modification thereof;

(6) the refusal to pay a claim for drawback; and

(7) the refusal to reliquidate an entry under section 1520(c) of this title, shall be final and conclusive upon all persons (including the United States and any officer thereof) unless a protest is filed in accordance with this section, or unless a civil action contesting the denial of a protest, in whole or in part, is commenced in the United States Court of International Trade ...

Only if one of these seven events is present can parties invoke jurisdiction under § 1581(a). Since none of these events appear in this case, § 1581(a) cannot apply. Thus, resort to § 1581(h) is not possible since that provision may be invoked only if the plaintiff *could have* filed an action under § 1581(a). Because § 1581(a) can be used only to review a protestable event, and Norcal has nothing to protest, jurisdiction in this Court cannot be asserted under 28 U.S.C. § 1581(h).

■ Before examining the propriety of jurisdiction under 28 U.S.C. § 1581(i)(4), this Court will dispose of the government's untenable position. Defendant argues that claims by domestic interested parties that merchandise of others was not properly marked are claims that the merchandise was not properly classified and was not assessed at the correct rate of duty. Such claims would properly fall within the purview of 19 U.S.C. § 1516, with jurisdiction in this Court following under § 1581(b). Since Norcal failed to exhaust their mandatory administrative remedies, defendant maintains that the Court lacks jurisdiction.

The government relies on *The Diamond Match Company v. United States*, 49 CCPA 52, C.A.D. 796 (1962), and *Bradford Co., et al. v. American Lithographic Co.*, 12 Ct.Cust.App. 318 (1924) to bolster this truly sweeping pronouncement. In *Diamond Match*, the main issue presented was whether an additional duty should have been assessed by the collector under section 304(c) of the Tariff Act because the imported merchandise was not marked with the country of origin. 49 CCPA at 53. In that case, three motions to dismiss the case were presented to the court as "jurisdictional questions." The first basis for dismissal concerned the plaintiff's challenge to the Secretary of the Treasury's discretion to exempt particular products from the marking requirements under certain conditions. The motion was denied because appellant was seeking to contest the collector's classification of the imported merchandise (a claim legitimately within the court's jurisdictional province), not the authority of the Secretary to make regulations permitting the exception of articles from the marking requirements (an impermissible challenge). *Id.* at 56.

The second ground advocated for dismissal was the failure of the Collector of Customs to comply with the requirements of Section 516(c) of the Tariff Act of 1930, which required that a copy of every appeal and protest filed by an American manufacturer, producer or wholesaler be mailed by the collector to the consignee or agent within five days after the filing thereof. *Id.* at 55. The court affirmed the denial by the Customs Court to dismiss on this basis because the five day period for the Collector's performance was held to be directory. *Id.* at 56. Failure by the collector to act within the proscribed time did not "deprive the plaintiff of its right to have its day in court." *Id.* at 57.

The third ground asserted was the alleged improper signature appearing on the protest. The court declined to overrule the decision of the Customs Court in denying this motion, since the real party in interest was known at all times, despite the inaccuracy of the name used. *Id.*

Having disposed of the jurisdictional challenges, the court turned to an examination of the substantive issue involved: whether paper bands on bundles of 50 spatulas, marked "Made in Japan" would rea-

sonably indicate the country of origin of the spatulas to "ultimate purchasers." *Id.* at 58. The substantive issue presented in this case is closely related: whether obscure country of origin markings on frozen food packages comply with the mandate of 19 U.S.C. § 1304, conspicuously indicating the country of origin of the frozen vegetables to the ultimate purchaser.[9]

*Diamond Match* does not refer to the government's purportedly "well-settled" generalization that a marking claim is really a request for proper classification and rate of duty. It also defies logic to assert that every marking case is necessarily a claim for proper classification, especially in this context, where plaintiff has simply requested that the country of origin be marked more clearly on the merchandise, and no more. Classification is far removed from the confines of this seemingly straightforward case.

In *Bradford Co., et al. v. American Lithographic Co.*, 12 Ct.Cust.App. 318 (1924), cigar bands were imported from Germany in bundles of 100 each. Around each bundle was a wrapper marked "Made in Germany," but the individual cigar bands were not marked with the country of origin. The collector determined that the merchandise, upon import into the U.S., was properly marked in accordance with section 304(a) of the Tariff Act of 1922 (the predecessor to the present 19 U.S.C. § 1304). He thereupon assessed duties at the appropriate rate provided for such merchandise. *Id.* at 320.

The American manufacturer, American Lithographic Co., filed a protest with the Board of General Appraisers pursuant to section 516(b) of the Tariff Act of 1922 (the forerunner to 19 U.S.C. § 1516(b)). The manufacturer challenged the collector's classification and assessment of imported cigar labels and bands. The Board sustained the protest, finding "that the individual cigar bands and labels were capable of being marked at a negligible cost, without injury, at the time of manufacture, so as to indicate the country of origin; and that section 304(a), supra, required such marking of the individual cigar bands and labels." *Id.* at 320.

The Board further held that the determination by the collector that the merchandise was, or was not, lawfully marked, involved classification of the merchandise. *Id.*

The appeals court affirmed the holding of the Board, since the classification of the merchandise was critical to the correct application of section 304(a). Since that provision required that every article be marked in as permanent a manner as the nature of the article would permit, a determination as to what class or group the manufactured article belongs was mandatory. *Id.* at 323. The court found the levy and collection of the additional 10% of the appraised value of the merchandise, provided as a remedy for failure to properly mark, was therefore dependent on the classification as well. *Id.*

Thus, the appeals court concluded, the avenue outlined in section 516(b) extended "to the American manufacturer, producer, or wholesaler the right to protest a classification of imported merchandise of a class and kind manufactured, produced, or sold at wholesale by him, and the rate of duty assessed thereon, if in his opinion such classification is wrong and the rate of duty assessed improper ..." *Id.* at 324.

When considered in light of the fact pattern of this case, *Bradford* has little relevance. In the first place, *Bradford* involved the importation of articles which had not been marked *at all* (as did *Diamond Match*). Here, the articles *have* been marked, but in a manner that is allegedly not "conspicuous" enough to indicate to the ultimate purchaser the country of origin. The issues are dissimilar.

---

9. Unlike the frozen vegetable packaging, the individual spatulas in *Diamond Match* were not themselves marked with the country of origin. Since the bundles of spatulas reached the ultimate purchasers without the paper bands indicating the country of origin having been broken, the appeals court affirmed the denial of the American manufacturer's protest. *Diamond Match,* 49 CCPA at 59.

Second, in *Bradford*, the court reviewed the classification of the imported product because the American manufacturer itself raised the issue: "in the opinion of the American manufacturer, producer, or wholesaler, an improper classification has been made and a wrong rate of duty assessed." *Bradford* at 321. Not only has Norcal *not* challenged the classification of the imported frozen vegetables, the government has *acknowledged* that this is a case concerning the proper construction of 19 U.S.C. § 1304, and nothing more. Defendant's Memorandum in Support of Motion to Dismiss at 3. *Bradford* is clearly inapposite.

Finally, both *Diamond Match* and *Bradford* were precipitated by the filing of a protest by the plaintiff U.S. manufacturers. As noted earlier, Norcal did not file a protest because this case does not involve a protestable event.

Therefore, the government's vexing assertion that this marking case is, in reality, a classification case, finds scant support in the case law cited. Clearly, no classification issue arises here, and the government's review of the implementing regulations—19 C.F.R. § 175 *et seq.*—which must precede the filing of a § 1516 case do not even merit examination. This is a marking case, and the government's argument about the premature nature of this claim would apply only if Norcal were challenging the classification of the imported merchandise.

During oral argument, the government placed much reliance on *Nat'l Corn Growers Ass'n v. Baker*, 840 F.2d 1547, 1554 (Fed.Cir.1988) to support its position that § 1516 provides the exclusive remedy for American industry protests. In *Nat'l Corn*, the Court of Appeals for the Federal Circuit reversed Judge Aquilino's ruling that this Court had jurisdiction to hear challenges by domestic producers regarding Customs' alleged unlawful tariff treatment of imported ethanol. Because § 1516 provided an exclusive remedy "for domestic industry injured by competition of imports on which lawful duty was not collected," *id.* at 1551, and that remedy allowed

for prospective relief only, *id.* at 1554, the appeals court rejected this Court's assumption of jurisdiction under 28 U.S.C. § 1581(i).

Two factors distinguish *Nat'l Corn's* influence on the outcome of this case. First, appellants in that case (domestic industry) argued that their allegations could not properly be reviewed under § 1516 because their complaints included matters other than rate of duty and classification, *id.* at 1550. Thus, appellants maintained that jurisdiction under § 1581(i) was allowable.

Our appeals court flatly rejected that argument: "[i]t seems obvious to us that the rulings did involve classification and rate of duty." *Id.* at 1551. Since § 1516 provided the exclusive method for American manufacturers' to challenge classification and rate of duty, that provision controlled. In so holding, the Court of Appeals for the Federal Circuit implicitly ruled that if, as domestic industry claimed, the matter at issue involved a subject *other than* classification and rate of duty, jurisdiction in this Court under § 1581(i) might be permissible.

In addition, the legislative history of § 1516 clearly recognizes that the statute was not intended to encompass every conceivable international trade issue that American manufacturers could possibly raise:

> Section 516 for the *first* time recognized that the American producer has an interest in appraisement and classification of imported merchandise. *It was there provided* that the domestic manufacturer might *protest against the appraisement or classification of merchandise* of a class or kind produced by him.

*Nat'l Corn* at 1553–54 (emphasis supplied), quoting Senate Finance Committee Report to Accompany H.R. 2667, 71st Cong., 1st Sess., Sept. 4, 1929, at 73–74. Thus, only if classification and rate of duty are challenged does § 1516 provide American manufacturers with the proper vehicle to park at this Court's jurisdictional doorstep (via § 1581(b)). Any other matters, unless provided for specifically within § 1581(a)–(h),

would have to fall within this Court's residual jurisdiction.

As noted by the government, "[s]ection 1581(i) jurisdiction may not be invoked when jurisdiction under another subsection of § 1581 is or could have been available, unless the remedy provided under that other subsection would be manifestly inadequate." *Miller & Co v. United States*, 824 F.2d 961, 963 (Fed.Cir.1987). The subsection claimed by Norcal, 1581(h), cannot apply here since the action taken by Customs does not constitute a protestable event.

Since no other subsection of § 1581 would allow plaintiff to invoke this Court's jurisdiction, reliance on the broad residual jurisdiction of the Court is warranted. Because Norcal seeks enforcement of the marking statute, 19 U.S.C. § 1304, and marking is a matter referred to in § 1581(h), this Court has jurisdiction under § 1581(i)(4). This case concerns administration and enforcement of the international trade laws mentioned in § 1581(a)–(h), and is properly within the jurisdictional boundaries of this Court.

■ The only remaining question is whether Norcal has standing to bring this action under the Court's residual jurisdiction. 28 U.S.C. § 2631(i) provides:

(i) Any civil action of which the Court of International Trade has jurisdiction, other than an action specified in subsections (a)–(h) of this section, may be commenced in the court by any person adversely affected or aggrieved by agency action within the meaning of section 702 of title 5.

Because plaintiff has pled and appears to have sustained actual injury, thereby suffering a legal wrong under the standard set forth in the Administrative Procedure Act [10], Norcal indeed has standing to bring an action under 28 U.S.C. § 1581(i)(4).

Therefore, because this Court has jurisdiction to consider Norcal's claim, the motion to dismiss is denied and the government is ordered to submit their answer to plaintiff's complaint within thirty calendar days of the date of this memorandum opinion.

SO ORDERED.

grieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof ...

---

10. **§ 702. Right of review**
A person suffering a legal wrong because of agency action, or adversely affected or ag-