**NORCAL/CROSETTI FOODS, INC., Patterson Frozen Foods, Inc. and Richard A. Shaw, Inc., each California corporations, Plaintiffs,**

v.

**UNITED STATES CUSTOMS SERVICE, United States Department of the Treasury, Honorable Nicholas Brady, Secretary of the Treasury, John Durant, Director of the Commercial Rulings Division, United States Customs Service, and Harvey B. Fox, Director of the Office of Regulations and Rulings of the United States Customs Service, Defendants,**

**Covemex, S.A. de C.V., Mar Bran, S. de R.L., Expohort, S.A. de C.V., Vegetales Congelados, S. de P.R., and Congelados Don Jose, S.A. de C.V., Amici Curiae.**

**Court No. 89–09–00495.**

United States Court of International Trade.

Feb. 27, 1991.

---

Titchell, Maltzman, Mark, Bass, Ohleyer & Mishel, Richard D. Maltzman, Robert Ted Parker, San Francisco, Cal., for plaintiffs.

Stuart M. Gerson, Asst. Atty. Gen., Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, Susan Burnett Mansfield, U.S. Customs Service, (Ruth Hansell, of counsel), for defendants.

Brownstein, Zeidman, and Schomer, Irwin Altschuler, Donald S. Stein, Washington, D.C., for amici curiae.

## OPINION

MUSGRAVE, Judge.

Plaintiffs move for summary judgment to compel defendant United States Customs Service to withdraw a Ruling Letter endorsing the present practice of marking imported frozen produce with country of origin on the rear panel of packages, and to require that such marking be placed on the front panel of packages in type size comparable to the product description and/or in a contrasting color. Plaintiffs also request that Customs be ordered to enact new regulations "to amend 19 C.F.R. § 134.41(b) to enforce the plain Congressional intent of 19 U.S.C. § 1304." Defendant United States Customs Service moves for summary judgment on the ground that the agency action at issue should be set aside only if the Court finds that Customs action was arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law.

**Held:** Customs Ruling Letter No. HQ 731830 does not comply with the clear language of 19 U.S.C. § 1304, and does not reflect the Congressional intent in enacting the statute. Frozen vegetables must be marked clearly and conspicuously with their country of origin as required by statute and as defined below.

## I. INTRODUCTION

This case presents questions concerning the interpretation of the country of origin marking requirement of 19 U.S.C. § 1304 (1990) ("§ 1304"), the jurisdiction of this Court under 28 U.S.C. § 1581(i)(4) (1990), the standard of review of administrative rulings, the discretion of the United States Customs Service ("Customs") to interpret its own regulations and the extent to which an administrative determination made by Customs may be overruled when that determination does not comply with law. The Court finds that the present practice of marking country of origin on frozen vegetable packages on the rear panel is not conspicuous, and that the Customs Ruling Letter No. HQ 731830 deviates from the clear language of, and does not follow the Congressional purpose behind, § 1304. Further, the markings are neither conspic-

uous nor "as legibl[e] as … as the nature of the [packages] … will permit."[1] The markings are neither easily found nor read without strain, as required by Customs Regulation 19 C.F.R. § 134.41(b) (1990).

Norcal/Crosetti Foods, Inc., Patterson Foods, Inc., and Richard A. Shaw, Inc. ("Norcal") are California-based packagers of frozen produce, and are supported in this action by local food packaging worker's unions. Based on their perception that imports of foreign frozen produce were seriously eroding their market, Norcal requested a ruling that imported frozen vegetables were not marked in accordance with § 1304 and Customs regulations and that they should be marked in a contrasting color on the front panel of the packages ("Ruling Request"). Norcal submitted photocopies of frozen vegetable packaging and several scientific reports on the levels of pesticides in imported produce. On November 21, 1988, John Durant, Director of the Commercial Rulings Division, denied Norcal's request in Ruling Letter No. HQ 731830 ("Ruling Letter"). The Ruling Letter interpreted the country of origin marking requirement contained in § 1304 and Customs Regulation 19 C.F.R. § 134.41(b).[2] Director Durant stated that the markings were legible and that

> [c]onsumers are familiar with the industry practice of displaying nutritional information and an expiration date on food products such as packages of frozen produce. As these dates and nutritional information are conspicuous on packages,

country of origin marking displayed in close proximity to such dates or data is conspicuous as well, *i.e.*, it is easily found and read without strain, and satisfies marking requirements.[3]

Following the denial of the Ruling Request, Norcal brought this action in the U.S. District Court for the Northern District of California, from which the case was transferred by stipulation to this Court on August 30, 1989.[4] Following the Court's decision on jurisdiction[5] both parties moved for summary judgment and the issues were argued before the Court on December 5, 1990.

## II. FACTS

Imported frozen vegetables have been sold in this country for some time, but their market share has increased exponentially in the past few years. The foreign produce appears to have blended seamlessly into the stream of commerce and is sold under well-known U.S. labels such as Green Giant and Bird's Eye. Norcal made the Ruling Request after its share of the frozen vegetable packaging market declined significantly due to increased imports of foreign produce. The Ruling Letter impacts the domestic industry at a particularly sensitive time; over 300 frozen food packaging jobs have been lost recently in plaintiffs' production area. *See Exported Jobs Drive Home Grim Lesson in Economics,* Los Angeles Times, January 13, 1991, at 1, col. 1; *Green Giant Layoffs Sock Watsonville,*

---

1. 19 U.S.C. § 1304 (1990). 19 U.S.C. § 1304(a) reads in pertinent part:

 (a) Marking of articles
 Except as hereinafter provided, every article of foreign origin (or its container …) imported into the United States shall be marked *in a conspicuous place as legibly, indelibly, and permanently as the nature of the article (or container) will permit* in such manner as to indicate to the ultimate purchaser in the United States the English name of the country of origin of the article.…
 19 U.S.C. § 1304(a) (1990) (emphasis added).

2. 19 C.F.R. § 134.41(b) reads as follows:

 Degree of permanence and visibility. The degree of permanence should be at least sufficient to ensure that in any reasonably foreseeable circumstance, the marking shall remain

on the article (or its container) until it reaches the ultimate purchaser unless it is deliberately removed. The marking must survive normal distribution and store handling. *The ultimate purchaser in the United States must be able to find the marking easily and read it without strain.*
19 C.F.R. § 134.41(b) (1990) (emphasis added).

3. Ruling Letter, at 4.

4. That stipulation was entered into "without waiver of any objection defendants may have to service, jurisdiction, or otherwise." Defendant's Reply at 7.

5. *Norcal/Crosetti Foods, Inc. v. United States Customs Serv.,* 14 CIT ——, 731 F.Supp. 510 (1990). *See also* discussion of jurisdictional issues, *infra,* at section III.A.

San Francisco Examiner, January 20, 1991, at B–1, col. 5.

Norcal alleges that because of the lower labor costs and comparatively lax regulatory requirements, Mexican producers in particular are able to export frozen vegetables into the United States at a fraction of the domestic production cost.[6] Norcal's unrebutted evidence shows that the final cost *to the consumer* of domestic frozen vegetables is comparable to that of imported frozen vegetables. However, the consumer may face—but may not perceive—an increased health risk in choosing frozen vegetables from other countries.[7] Food and Drug Administration ("F.D.A.") inspectors at various border crossings have found levels of pesticides in imported vegetables that would be unacceptable in domestic produce. Consumers might or might not choose to eat domestically-produced frozen vegetables if informed of the country of origin by conspicuous marking. Section 1304 mandates that they should be given a realistic choice.

The government did not support its argument that the packages submitted were not representative of packages from the entire country. The Court's own research in eight states[8] revealed that they were in fact representative of frozen food packaging from across the country. However, certain packages submitted to the Court were not part of the administrative record and should properly be disregarded. *P.P.G. Indus., Inc. v. United States*, 13 CIT ——, ——, 708 F.Supp. 1327, 1329 (1989). The Court's decision is based solely on those packages submitted to Customs with the Ruling Request.

On the sample packages supplied to Customs, the country of origin marking appeared almost exclusively on the rear panel. Manufacturers place the country of origin marking where it is not easily found by the consumer. Most often, it is lost among the various small typeface information contained on the back or side panel of the package. The producers are reluctant to display conspicuously the source of the food, suggesting that there must be a valid reason for requiring stricter compliance than required in the Ruling Letter.[9]

The product type, brand name and weight, and occasionally other descriptive data[10] are all conspicuously displayed on the front panel. The packaging typically uses contrasting colors for the product type and brand name; the weight of the package is often simply in black-on-white lettering. This is the data the manufacturer apparently wants the customer to see— except for the weight, which is required to be displayed according to 15 U.S.C. § 1453 (1988). Other less important data is in fine print on the rear of the package. Nutritional information is uniformly displayed on the rear or side panel under F.D.A. regulation 21 C.F.R. § 101.9 (1990). The only consistency in the country of origin marking was the inconsistency of where the manufacturer chooses to place the mark. Therefore, the customer cannot be assured of easily finding the mark, even if he or she gives the package a reasonable inspection. The manufacturers do not place the country of origin mark conspicuously, perhaps for fear of losing sales. This is at cross-purposes with Congress' attempt to ensure that consumers have the country of origin of foreign goods in mind when selecting products, *i.e.* *before* purchase.

---

6. This allegation was not rebutted. Ruling Request at 17–18.

7. This is vehemently denied by defendants, and especially by *amici,* but there is enough evidence to buttress the proposition that the consumer should be given the easy choice mandated by 19 U.S.C. § 1304.

8. California, Connecticut, Florida, Georgia, New Jersey, New Mexico, New York and South Carolina.

9. *See National Juice Products Assoc. v. United States,* 10 C.I.T. 48, 54 n. 8, 628 F.Supp. 978 (1986), where plaintiffs attempted to show that marking packages with the country of origin would work irreparable harm upon them by causing a "loss of consumer acceptance."

10. Such as "Grade A Fancy," "No Salt Added," *etc.*

The Court takes judicial notice of the common method of displaying the merchandise in shelved freezers or frozen food bins with the front panel in view and the rear panel obscured. Frozen vegetables are commonly marketed in long, low freezers with open tops, or wall-mounted freezers with glass doors. Access is limited and sometimes awkward, given that the produce must not defrost. The packages are usually placed so that only the front panel is clearly visible. Customers are unable to scan the labels as easily as they can those on dry goods or other produce that is not frozen, because the package is frozen and cold to the touch and because, at least in upright freezers, to do so the freezer door must be held open. All these factors prevent the consumer from having the opportunity to see the country of origin marking that is secluded among the small print on the back of the package.[11]

## III. DISCUSSION

### A. Jurisdiction

The government moved on November 8, 1989 to dismiss the case for lack of jurisdiction. Norcal invoked jurisdiction in this Court under 28 U.S.C. § 1581(h) (1990), or in the alternative under § 1581(i)(4). After briefing and oral argument, the Court decided in Slip Op. 90–13, 14 CIT ——, 731 F.Supp. 510 (1990), that jurisdiction was proper under 28 U.S.C. § 1581(i)(4) (1990).

Jurisdiction cannot be based on 28 U.S.C. § 1581(h), because standing under that section is, in effect, restricted to importers. Standing thereunder is restricted by 28 U.S.C. § 2631(h), to persons who would have standing to bring a case under 28

U.S.C. § 1581(a) to contest a denial of a protest under 19 U.S.C. § 1515.[12] Section 1515 cases arise exclusively from protests filed under 19 U.S.C. § 1514.[13] Section 1514, however, does not apply to domestic interested parties defined in 19 U.S.C. § 1516 (1990).[14] It explicitly states that *"[e]xcept as provided in ... [19 U.S.C. § 1516] ...*, decisions of the appropriate customs officer ... shall be final and conclusive ... unless a protest is filed in accordance with this section...."[15] Therefore, for parties who can file actions under section 1516, § 1514 does not apply. The statute cannot be read otherwise. Section 1516 is specifically restricted to petitions by interested parties to challenge "the appraised value, the classification, or rate of duty [of imported goods]." 19 U.S.C. § 1516. If Norcal had come to this Court alleging that jurisdiction was available under § 1516, the government would surely (and more convincingly) have challenged the appropriateness of shoe-horning an action concerning the proper *marking* of merchandise into a jurisdictional statute concerned with appraised value, classification or rate of duty. This is an exceptional case involving a party who would have standing to file an action under § 1516, but does not have a cause of action which fits within its boundaries. It is in this type of special circumstance that this Court's jurisdiction was expanded by Congress in 28 U.S.C. § 1581(i)(4) so that plaintiffs like Norcal would not be frustrated by an overly technical reading of this Court's jurisdictional statute. Norcal can proceed under 28 U.S.C. § 1581(i)(4) because its claim would be barred under any other portion of § 1581. *Miller & Co. v. United States*, 824

---

**11.** *Cf.* 21 C.F.R. § 101.15(a)(1) (1990) (defines the prominence of the required weight statements on packages—they must "appear on the part or panel of the label which is presented or displayed under customary conditions of purchase....").

**12.** 28 U.S.C. § 2631(h) (1990).

**13.** 19 U.S.C. § 1515 provides in part that "the appropriate customs officer, within two years from the date a protest was *filed in accordance with [19 U.S.C. § 1514]*, shall review the protest and shall allow or deny such protest in whole or

in part...." 19 U.S.C. § 1515(a) (1990) (emphasis added).

**14.** It is clear that Norcal would be a "domestic interested party" under several provisions of 19 U.S.C. § 1516. The government is correct to point out that 19 U.S.C. § 1516 does not grant Norcal a jurisdictional foothold in this Court. However, it shows that Congress intended such domestic parties to have redress in this Court, at least for the cases therein described.

**15.** 19 U.S.C. § 1514(a) (1990) (emphasis added).

**734**

F.2d 961, 963 (Fed.Cir.1987), *cert. denied,* 484 U.S. 1041, 108 S.Ct. 773, 98 L.Ed.2d 859 (1988) ("Section 1581(i) jurisdiction may not be invoked when jurisdiction under another subsection of § 1581 is or could have been available").

 Congress set up the jurisdictional checklist described above primarily to provide *importers* with an efficient way to administratively challenge Customs determinations in the seven areas listed in 19 U.S.C. § 1514(a) and later in this Court only if their protest was denied. Importers are the most common and necessary parties to protests of Customs determinations. Yet Congress also intended for domestic, non-importer interested parties to have redress before this Court. Most such cases will fall within 19 U.S.C. § 1516. This case is one of the special instances where a party without the normal "importer" standing necessary for a direct challenge under § 1581(h) suffers from Customs' administration and enforcement of the marking statute. Norcal does not protest the importation of the vegetables, merely Customs' interpretation of § 1304. Therefore, Norcal is exactly the type of party Congress intended to cover in the residual jurisdiction clause of 28 U.S.C. § 1581(i)(4). Although Norcal lacks standing under 28 U.S.C. § 1581(h), this Court may take jurisdiction pursuant to the residual jurisdiction of 28 U.S.C. § 1581(i)(4),[16] since the case directly relates to the proper administration and enforcement of an international trade law (marking) referred to in 28 U.S.C. § 1581(a)–(h). To put § 1581(i)(4) in the context of this case, the Court holds that it has exclusive jurisdiction of any civil action commenced against the United States, the Customs Service, and the officers of the Customs Service, that arises out of any law of the United States providing for administration and enforcement with respect to country of origin marking. This jurisdic-

tion is in addition to the Court's direct jurisdiction over § 1581(h) cases brought by importers. Because Norcal seeks enforcement of the marking statute, § 1304, and marking is a matter specifically referred to in § 1581(h), this Court has jurisdiction under § 1581(i)(4). In light of the remand of this matter to Customs, this Court believes that it would not be appropriate to require exhaustion of administrative remedies under 28 U.S.C. § 2637(d) (1990).

**B. Standard of Review**

 In this case the Court is asked to review an administrative determination construing both a statute and an administrative regulation. The construction of a statute by the agency charged with administering it is entitled to deference by the courts, and ordinarily that construction will be affirmed if it has a reasonable basis in law. But this Court is not obliged "to stand aside and rubber-stamp [its] affirmance of administrative decisions [deemed] inconsistent with the statutory mandate or that frustrate the Congressional policy underlying a statute." *N.L.R.B. v. Brown,* 380 U.S. 278, 291, 85 S.Ct. 980, 988, 13 L.Ed.2d 839 (1965). As shown below, the congressional intent behind § 1304 is clear and not contradictory. This Court cannot shirk its responsibility to see that intent fulfilled.

*Chevron U.S.A., Inc. v. Natural Resources Defense Council* teaches that

[t]he judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to the clear congressional intent. If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that

---

**16.** 28 U.S.C. § 1581(i) reads in pertinent part:
(i) In addition to the jurisdiction conferred upon the Court of International Trade by subsections (a)–(h) of this section and subject to the exception set forth in subsection (j) of this section, the Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for— ...
(4) administration and enforcement with respect to the matters referred to in ... subsections (a)–(h) of this section.
28 U.S.C. § 1581(i) (1990).

intention is the law and must be given effect.[17]

This Court must determine whether Customs has construed § 1304 in a manner clearly contrary to the congressional intent. Where Congress in plain language has expressed its intention and the legislative history does not demonstrate a contrary purpose, this Court is bound to follow the statutory provision as written. *Schramm v. Department of Health & Human Services.*, 682 F.2d 85, 91 (3d Cir.1982) (*criticized on other grounds by Romane v. Defense Contract Audit Agency,* 760 F.2d 1286 (C.A.F.C.1985)). Section 1304 uses simple language requiring conspicuous marking. The legislative history described *infra* compels the Court to the conclusion that Customs has not followed the statutory provision as written.

■ The government argues that the Ruling Letter is entitled to considerable deference and is not arbitrary, capricious, or otherwise contrary to law. The agency's interpretation is "permissible" and 19 C.F.R. § 134.41(b) is entitled to considerable deference because it is a "longstanding and consistent administrative regulation." The government confuses the standard of review of regulations with that of Ruling Letters. Customs regulations are usually entitled to deference. *See, e.g., Chevron v. N.R.D.C., supra.* But Customs ruling letters which bind only the party to which they are issued are not entitled to the same deference. However, in this case Customs' action exceeds even the abuse of discretion standard described in *Chevron.*

The Treasury Department ("Treasury") has the duty to implement rules and regulations according to 19 U.S.C. § 1304(b) but must comply with the plain words of the statute, or the regulations they issue are a nullity. The Supreme Court has put it succinctly:

'The power of an administrative officer or board to administer a federal statute

and to prescribe rules and regulations to that end is ... [only] the power to adopt regulations to carry into effect the will of the Congress as expressed by the statute. A regulation which does not do this, but operates to create a rule out of harmony with the statute, is a mere nullity.'[18]

The Ruling Letter in this case is such a nullity. It creates a rule out of harmony with the "conspicuous" requirement of § 1304. The government claims that it is within Customs' power to make rules and regulations to administer the marking statute. That is undoubted. What is unacceptable is the specific interpretation given in this case. Although plaintiff also objects to 19 C.F.R. § 134.41(b) and suggests redrafting it for Customs, the Court does not now need to overturn that regulation to right the manifest wrong. The Ruling Letter must be overturned because the ultimate criterion in a case involving the interpretation of administrative regulations is "the administrative interpretation, which becomes of controlling weight unless it is *plainly erroneous or inconsistent with the regulation.*" *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 413–14, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945) (emphasis added). The Ruling Letter is plainly erroneous in light of 19 C.F.R. § 134.41(b) and is incompatible with the clear language used consistently by Congress since 1897.

C. Legislative History of 19 U.S.C. § 1304

■ The government claims that the Customs Service interpretation of the statute is consistent with the legislative history. To the extent that the legislative history of the marking requirement can be found, that statement is in error as to the Ruling Letter. Although the government admits Congress intended to provide consumers with a choice, they err by ignoring

---

**17.** *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843 n. 9, 104 S.Ct. 2778, 2781 n. 9, 81 L.Ed.2d 694 (1984), *reh'g denied,* 468 U.S. 1227, 105 S.Ct. 28, 82 L.Ed.2d 921 (1984) (citations omitted).

**18.** *United States v. Larionoff,* 431 U.S. 864, 873 n. 12, 97 S.Ct. 2150, 2156 n. 12, 53 L.Ed.2d 48 (1977) (*quoting Manhattan Gen. Equip. Co. v. Commissioner,* 297 U.S. 129, 134, 56 S.Ct. 397, 400, 80 L.Ed. 528 (1936)).

the principal intent behind the marking requirement: that goods be marked *conspicuously* so that consumers can easily find the marks. Ignoring that obvious intent defeats the entire purpose of the marking requirement.

The legislative history of the country of origin marking requirement demonstrates that Congress intended goods be marked clearly and conspicuously. Congress first required country of origin markings in 1890.[19] The requirement that goods be marked "in a conspicuous place" was added by the Tariff of 1897, but there is apparently no legislative history as to the addition of that requirement.[20] Presumably, Congress did not believe that markings that were "plainly marked" in "legible English words" were adequate and wanted to ensure that products were marked manifestly and visibly. The Tariff Act of 1909 required that "all articles of foreign manufacture ... shall be marked, ... in legible English words, *in a conspicuous place* that shall not be covered or obscured by any such attachments or arrangements, so as to indicate the country of origin ...," and that all packages containing imported articles "shall be marked ... so as to indicate legibly and plainly, in English words, the country of origin and the quantity of their contents ..."[21]

The marking requirement was rewritten in the Trade and Tariff Act of 1930, and again in 1938, but contained the same requirements as before.[22] In 1953 Congress exempted goods which could not be economically marked[23] and no further amendments were made until 1984, when Congress exempted certain steel pipe and fittings and allowed alternate methods of marking for certain items.[24] In 1988 Congress increased penalties for concealing markings.[25]

Congress acted in 1890 to implement what is now § 1304 primarily so that imported goods would be marked with their country of origin or refused entry. Congress also intended to protect customers from shoddy foreign-produced goods sold under American labels.[26] Congress' intent in passing at least one revision of the marking requirement might be found in the headnote to the Tariff Act of 1930, which states that its purpose is "to provide reve-

---

19. The Tariff Act of 1890 required that

 [A]ll articles of foreign manufacture, such as are usually or ordinarily marked, stamped, branded or labeled, and all packages containing such or other imported articles, shall be plainly marked, stamped, branded, or labeled in legible English words, so as to indicate the country of their origin; and unless so marked, stamped, branded or labeled they shall not be admitted to entry.

 Tariff of 1890, § 6, 26 Stat. 613 (1890).

20. Tariff Act of 1897, c. 11, § 8, 30 Stat. 206 (1897).

21. Tariff of 1909, c. 6, § 7, 36 Stat. 85 (1909) (*emphasis added*). *Note that both the quantity of the contents and the country of origin were required to be marked legibly and plainly.*

22. Tariff Act of 1930, Pub.L. No. 71–361, c. 497, § 304, 46 Stat. 590, 687 (1930); Customs Administrative Act, Pub.L. No. 75–721, c. 679, § 3, 52 Stat. 1077 (1938).

23. Customs Simplification Act, Pub.L. No. 83–243, c. 397, § 4(c), 67 Stat. 507, 509 (1953).

24. Trade and Tariff Act of 1984, Pub.L. No. 98–573, tit. II, § 207, 98 Stat. 2976 (1984).

25. Omnibus Trade and Competitiveness Act of 1988, Pub.L. No. 100–418, tit. I, § 1907(a)(1), 102 Stat. 1314 (1988). By thus amending the statute, Congress arguably intended to revitalize the country of origin marking requirement, and to redouble efforts to have goods marked conspicuously.

26. House Report No. 1466 states that

 [t]he admitted superiority of certain lines of American goods has induced the importation of foreign imitations of inferior quality, with American brands, to be put on our market as the superior goods of American manufacture. Inferior goods, the manufacture of one country, have also been imported and sold bearing the marks of the superior manufactures of established reputation of another country. A practice has also grown up of importing goods under invoices authenticated in a country other, and in a currency of less value, than of the country of manufacture.

 Section 23 forbids entry to merchandise not plainly marked, stamped, branded, or labelled with the name of the country in which it is manufactured, *with the purpose of protecting both our own people from the imposition of inferior goods* and the revenue from possible loss through undervaluation.

 H.R.Rep. No. 1466, 51st Cong., 1st Sess. at 6–7 (1890) (*emphasis added*).

nue, to regulate commerce with foreign countries, *to encourage the industries of the United States, to protect American labor,* and for other purposes." [27] Whether the marking requirement was originally for the purpose of protecting domestic manufacturers or consumers does not determine this Court's decision. What is at issue is whether Customs' interpretation of § 1304 and its own regulations correctly implement the Congressional intent that goods be marked conspicuously. Director Durant failed to discuss the readily apparent congressional intent and the judicial gloss on the intent behind the marking requirement. This failure substantially reduces the persuasiveness of the Ruling Letter.[28] Although the government strenuously opposes the notion that a purpose of the marking requirement is the protection of U.S. industry, cases construing the marking requirement have found that Congress did intend, at least in part, to benefit domestic labor and industry. *See, e.g., United States v. American Sponge & Chamois,* 16 Ct.Cust.App. 61, 66, T.D. 42,-731 (1928) ("The [marking] law was not intended so much to derive revenue as it was to protect the American manufacturer and purchaser of the merchandise"). In *Globemaster, Inc. v. United States,* 68 Cust.Ct. 77, 340 F.Supp. 974 (1972), the Customs Court discussed whether an importer may be relieved of the country of origin marking requirement by payment of the 10% additional duty provided for in § 1304. Although the Court did not address the issue of whether the markings involved were conspicuous, it stated that

[section 1304] reflects the Congressional intent that the public be apprised of the country of origin of merchandise.... Congress was also aware of the fact that many consumers prefer merchandise produced in this country, and sought '... to confer an advantage on domestic producers of competing goods.' [29]

Given the judicial interpretation that Congress did intend to protect domestic producers, the Customs Service should have addressed that apparent intent before summarily dismissing the Ruling Request. Customs has found a congressional intent behind § 1304 in other cases, but failed to do so here. In Treasury Decision 91–7, Tariff Treatment and Country of Origin Marking of Sets, Mixtures, and Composite Goods, codefendant Harvey Fox, Director of the Office of Regulations and Rulings, recognized that

[t]he primary purpose of the country of origin marking statute is to 'mark the goods so that at the time of purchase the ultimate purchaser may, by knowing where the goods were produced, be able to buy or refuse to buy them, if such marking should influence his will.' [30]

The government argues that since Congress has repeatedly reenacted the provisions of § 1304 and added certain provisions but never changed Customs' construction of "conspicuous," then Customs' interpretation of its regulation "must be deemed to have received Congressional approval." [31] The government is mixing apples with frozen broccoli. Congress may or may not have acquiesced in 19 C.F.R.

---

**27.** Headnote to Tariff Act of 1930, 46 Stat. at 590 (1930) (emphasis added).

**28.** The only mention in the Ruling Letter of congressional intent is as follows:

We believe the proper sources for defining the word "conspicuous" are the statute itself, the regulations issued thereunder and court decisions made in light of both of these. The use of dictionary definitions would be necessary and proper only in the absence of these other sources. In addition, we note the lack of any Congressional action to modify the statute in any way that would result in your interpretation of 'conspicuous'. Our interpretation and application of 19 U.S.C. § 1304 has been well known for many years.

Ruling Letter, at 2.

**29.** *Globemaster v. United States,* 340 F.Supp. at 976 (*citing United States v. Ury,* 106 F.2d 28, 29 (2d Cir.1939)).

**30.** T.D. 91–7, 25 Cust.Bull. & Dec. No. 2/3, 6, 14–15 (Jan. 8, 1991) (*citing United States v. Friedlaender & Co.,* 27 C.C.P.A. 297, 302 (1940)).

**31.** Defendant's Reply Brief to Plaintiff's Response to Defendant's Cross–Motion for Summary Judgment, at 5 (*citing Fribourg Navigation Co. v. Commissioner,* 383 U.S. 272, 283, 86 S.Ct. 862, 868–69, 15 L.Ed.2d 751 (1966)).

§ 134.41(b), but Congress has clearly not acquiesced in the Ruling Letter as the specific issue has not arisen before Norcal's Ruling Request, and Congress has not amended § 1304 since the Ruling Letter was issued. The clarity of the marking requirement and the legislative history and judicial interpretations of 19 U.S.C. § 1304 compel this Court to fulfil its obligation to enforce the clear language of the statute by finding that the Ruling Letter clearly contravenes the requirement that imported goods be *conspicuously* marked.

### D. Customs Has Ruled Inconsistently

This Court has an obligation "to assure uniformity in the application of the Customs laws throughout the United States where, as recognized, the administrative determinations in the respective Customs districts and regions may conflict due to error construction [sic] or lack of individual knowledge of the facts." *P.P.G. Indus., Inc. v. United States*, 4 CIT 143, 148, 1982 WL 2262 (1982); *see also National Corn Growers Assoc. v. Baker*, 10 CIT 517, 521, 643 F.Supp. 626 (1986) ("An important objective of ... the Customs Courts Act of 1980 was to provide greater uniformity and consistency in the interpretation and application of the international trade laws.") The Court therefore must carefully observe the Customs Service decisions in this area to ensure uniform application of the statute. The Customs Service has ruled inconsistently on country of origin marking of frozen produce. Although Customs can change its policy in implementing the marking requirement, the Court's research has revealed a lack of thoughtful analysis of the issues involved in those rulings pertaining to marking of frozen produce. Prior rulings are not acknowledged in the Ruling Letter. Other rulings do not refer to each other, even when changing Customs policy. The Court therefore deems it necessary to examine the Customs rulings in this area.

The District Director of Customs from Laredo, Texas held in 1986 that packages of broccoli imported in bulk must be marked with the country of origin because the broccoli was not substantially transformed after entry.[32] That ruling conflicts with Customs Service Decision No. 79–404, which exempted frozen vegetables imported in bulk from the marking requirement even after repackaging because they were (incorrectly) held to be incapable of being marked. 13 Cust.Bull. 1606 (1979). But the 1986 ruling makes no reference to the prior decision. Customs Regulation 19 C.F.R. § 134.25 (1984) does attempt to establish some uniformity by requiring importers to certify that the goods they import will be properly marked after repackaging. Imported frozen vegetables must be marked with their country of origin so that the ultimate consumer will know where the vegetables came from, as mandated by statute.

### E. The Ruling Letter Lacks Reasoned Analysis

One factor to be considered in giving weight to an administrative ruling is "the 'thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.' " *Adamo Wrecking Co. v. United States*, 434 U.S. 275, 287 n. 5, 98 S.Ct. 566, 574 n. 5, 54 L.Ed.2d 538 (1978) (*quoting Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944)). Customs reasoned that the country of origin marking was placed close to the expiration date or nutritional information panel on some of the packages and was therefore conspicuous because consumers often look at the expiration date on produce.[33] The government claims that it does not understand plaintiff's argument that Customs bootstrapped conspicuousness by claiming that nutritional information was conspic-

---

**32.** C.S.D. 86–28, 20 Cust.Bull. 656, 660–61 (1986).

**33.** "As [expiration] dates and nutritional information are conspicuous on packages, country of origin marking displayed in close proximity to such dates or data is conspicuous as well...." Ruling Letter, at 4.

uous and that because the country of origin marking was close to or among the nutritional information, it was therefore conspicuous as well. This deduction seems transparent to the Court; indeed the flaw in Customs' reasoning is conspicuous. The analogy made in the Ruling Letter to the placement of nutritional information on packages is unconvincing because that information is not presently required to be placed on packages at all.[34] Logically, therefore, there is less interest in having it clearly before the customer when he or she picks up the package. A more persuasive analogy is to the requirement that packages disclose the weight of their contents on the principal display panel. 15 U.S.C. § 1453(a)(2)–(3) (1988). The weight marking must be a certain size, located on the front, or most prominent panel, of the package.

Customs' conclusory rationale that the marking is conspicuous by virtue of its proximity to nutritional information is not persuasive. It is a simple but flawed syllogism. The main premise that nutritional information and expiration dates are marked conspicuously is unsupported conjecture. Also, pointing to one requirement as evidence of the conspicuousness of the other is logically flawed. The two are not born of the same concerns, or the same level of congressional involvement. Nutritional information may be conspicuous for purposes of F.D.A. regulations which require it on the rear or side panel of packages. But Customs cannot interpret the marking statute according to requirements set forth in F.D.A. regulations, and should analogize hesitantly and perspicaciously to those regulations, if it must analogize at all. There is no evidence that Congress intended to allow or require marking on the rear or side panels of packages. Congress

did intend that packages be marked conspicuously, and "as legibly" as possible.

Director Durant refused to address the common meaning of the terms used in the statute. But where a ruling depends on the construction of a single non-technical word, looking at the common usage is especially appropriate.[35] "Conspicuous" is not subject to a great variety of definitions. Webster's New Universal Unabridged Dictionary defines *conspicuous* as: "1. easy to see or perceive; *obvious; manifest;* as, to stand in a conspicuous place.... 2. *attracting attention* by being unexpected, unusual, or outstanding; remarkable; striking...." Webster's New Universal Unabridged Dictionary 390 (2nd Ed., 1983). Webster's New International Dictionary Unabridged defines *conspicuous:* "1. Obvious to the eye or mind; *plainly visible;* manifest. 2. *Attracting or tending to attract attention,* as by reason of size, brilliance, contrast, or station; striking; eminent; as, a conspicuous tower; conspicuous statement. 3. Undesirably noticeable, esp. by reason of accident or violation of good taste; as, a conspicuous necktie; ... *See* PROMINENT ..." Webster's New International Dictionary Unabridged 570 (2nd Ed.1956). The present method of marking frozen vegetable packaging is clearly not conspicuous within the above definitions, nor within the use of the word conspicuous in the clear language of the statute.

Customs failed to discuss factors it considered in similar cases. For instance, Customs Service Decision 90–41 held that grand pianos made in Korea but designed in West Germany must be marked where the consumer expects to see the country of origin.

---

**34.** Food and Drug Administration regulations require nutritional information only on a few food types, while generally, "[n]utrition information relating to food *may* be included on the label and in the labeling of the product: Provided, That it conforms to the requirements of this section." 21 C.F.R. § 109(a) (1990) (emphasis added). Although the F.D.A. is contemplating new regulations which would require the nutritional information on food labels, those regulations have not been promulgated.

**35.** *See Addison v. Holly Hill Fruit Products, Inc.,* 322 U.S. 607, 618, 64 S.Ct. 1215, 88 L.Ed. 1488 (1944), *reh'g denied,* 323 U.S. 809, 65 S.Ct. 27, 89 L.Ed. 645 (1944) ("Legislation when not expressed in technical terms is addressed to the common run of men and is therefore to be understood according to the ordinary sense of the thing.")

We require only that the location of the country of origin marking be conspicuous, and not that it be in the most conspicuous location. *We take into account where the ultimate purchaser of a grand piano expects to find country of origin marking....* [W]e are also guided by the requirement that the marking be easily found and read without strain; that the method of marking is appropriate to the nature of the article; and that the marking will be sufficiently permanent to ensure that the marking will remain on the article until it reaches the ultimate consumer unless deliberately removed.

C.S.D. 90–41, 24 Cust.B. & Dec. 32, 35 (April 4, 1990) (emphasis added). The Ruling Letter lacks any similarly convincing rationale, or even a cogent explanation of country of origin marking requirements. Well-known requirements were not analyzed or explained. Customs failed to consider in any manner the marketing and display of frozen vegetables. Certain packages listed the name and U.S. address of the manufacturer, but without nearby notations of country of origin. In that case, the packages must more clearly denote country of origin than must packages without a U.S. address because a package bearing an American address has the capability of actively misleading consumers into believing that a product is produced by an American manufacturer. If the words "U.S.," or "America," or a United States address appear on the label, then the article must be marked with the country of origin in at least a comparable size. 19 U.S.C. § 1304; 19 C.F.R. § 134.46 (1990); *National Juice Products Assoc. v. United States*, 10 CIT 48, 628 F.Supp. 978 (1986). Although Director Durant mentioned this requirement in the Ruling Letter, he did not mention that several of the packages did not comply. For instance, packages stamped with the country of origin and the expiration date all failed to place that information on the same panel as the address of the U.S. distributor. Still, Director Durant acquiesced in this violation with a wink toward the regulations: "Customs believes

that allowing country of origin marking to be stamped on with an expiration date facilitates compliance with the marking laws since it allows packers to have a small number of standard packages with space left available for imprinting information unique to the package." Ruling Letter, at 4–5. Customs should not place the convenience of packagers above the law.

Defendants state that the markings are often small and lost in the nutritional information, and that

the marking on a particular label might not be obscured, but might nonetheless not comply with country of origin marking requirements because, for example, the lettering is so small as to not be legible, the marking might be lost in the nutritional information, or the marking might be smeared. Nothing in the regulation at issue, the ruling at issue, our moving brief, or this brief is to the contrary.[36]

The Court agrees entirely. However, the Ruling Letter failed to address these points. Some of the packages submitted to Customs did have a country of origin marking lost in the nutritional information, yet Customs did not invalidate them. Others had smudged markings, which in connection with the small typeface involved and the location of the marks on the side panel of the package, combine to prevent consumers from finding them. The Ruling Letter allows food producers to bury the country of origin marking among other small typeface information on the rear panel of the package, where it is unseen and ignored.

In addition, certain packages submitted to the Court (but not to Customs) marked "May Contain Product of United States, U.K., Poland, Spain, Mexico, Belgium and Guatemala" are insufficiently marked. See C.S.D. 89–111, 23 Cust.B. & Dec. No. 44 (April, 1989). Although these packages are not officially before the Court, they violate Customs regulations and § 1304 and cannot be ignored. The Court holds that packages of frozen produce bearing similar markings must be refused entry until

---

**36.** Defendant's Reply Brief, at 13.

marked with the actual country of origin of produce. *See, e.g.,* C.S.D. 86–27, 20 Cust.B. 654, 655–56 (1986) (imported orange juice concentrate could not be marked "may contain concentrate from Florida and/or Brazil" because such language was "too far a deviation from the statutory requirement of section 1304 ... to inform the ultimate purchaser of the country of origin").

Nowhere do defendants and their allied *amici curiae* contend that any harm would befall Customs or *amici's* clients if the intent of Congress were implemented and the packages were marked in accordance with law—and the consumer actually visually informed of the source country of the produce. A search for any concern by the defendants for the actual or potential deception practiced upon consumers is fruitless. Defendants' thrust appears to be the preservation of prerogatives, not the pursuit of justice under the law.

The government's argument equating Customs' admittedly longstanding administrative regulation interpreting "conspicuous" to mean easily found and read without strain, with the Ruling Letter in this case that frozen vegetable markings comply with those requirements is disingenuous. Although plaintiffs object to the regulation, their main complaint is that the Ruling Letter does not follow the Congressional intent behind the "conspicuous" requirement. The issue is not whether easily found and read without strain sufficiently substitute for "conspicuous," but whether both requirements would allow the present method of marking frozen vegetables to continue. The Court finds that those requirements are not met by the present practice of marking on the rear or side panel. Although Customs has routinely interpreted "conspicuous" through 19 C.F.R. § 134.41(b), it failed in the Ruling Letter to follow the clear meaning of the statute *or* the regulation.

## IV. CONCLUSION

The primary question is whether the requirement that goods be marked in a conspicuous place as legibly, indelibly and as permanently as the package will permit is met by placing such a marking in relatively fine print on a panel of the package that invariably is not presented to the consumer's scrutiny. Anyone with a common understanding of the term "conspicuous" must answer that question in the negative. "Conspicuous" marking does not necessarily mean "in type size comparable to the product description and/or in a contrasting color," but does mean clear to the naked eye. The markings are not as conspicuous or as legible as the packages will permit: a glance at the front panel reveals an abundance of space which would accommodate the mandated disclosure more legibly than at present. In light of the special factors involved in the marketing of frozen food products, the marking must be on the front of the package. Foreign-origin produce may or may not have gained U.S. market share because U.S. consumers are essentially unaware of its origin. What is clear, however, is that the Congressional mandate that imported produce be conspicuously marked is not being carried out, and therefore the consumer does not have the choice mandated by statute.

The clear language of § 1304 requires *conspicuous* marking. The legislative history and judicial interpretation indicate that the purpose is to give the consumer an easily discernible choice and to aid U.S. business and labor, insofar as domestic consumers may favor domestic products. The present placement of marking does not carry out the statutory mandate because it is not conspicuous. Defendants and *amici* offer no substantive reasons why the mandate is pernicious or harmful, or any other reason why the statutory mandate should not be carried out. The Court holds that it must be carried out. This can be done by complying with the statute, which at a minimum means that the country of origin must be displayed on the front or most prominent panel of the package, that is, the panel most often presented to the consumer. The mark must be placed on that panel in a conspicuous manner, keeping in mind the common meaning of that term.

Accordingly, this matter is remanded to the Commissioner of Customs for action

consistent with the forgoing decision. It is so ordered.

## AMENDED JUDGMENT

Upon consideration of the briefs filed and the arguments presented in this case, the Court finds that country of origin markings on frozen produce as submitted to the U.S. Customs Service are neither located "in a conspicuous place" nor set forth "as legibly as the nature of the ... containers ... will permit" as required by statute. Based upon that finding, and the Court's further finding that there is no genuine issue of material fact, the Court finds that plaintiffs are entitled to judgement as a matter of law. Good cause appearing, it is hereby

ORDERED that defendants shall withdraw the Ruling Letter dated November 21, 1988 attached as Exhibit B to plaintiffs' complaint, and shall issue a new ruling letter finding that:

1. The samples of frozen produce packaging submitted to Customs with plaintiffs' ruling request do not comply with 19 U.S.C. § 1304 nor 19 C.F.R. § 134;

2. In order to be conspicuous, in light of the method by which frozen produce is merchandised and in light of the other requirements of 19 U.S.C. § 1304, country of origin marking of frozen produce must be located on the front panel of the package and must be marked in a type size and style so as to be conspicuous;

3. Any prior Customs Decisions or rulings not in accordance with this decision shall be revoked by the new ruling letter to be issued by Customs.

Accordingly, this matter is remanded to the United States Customs Service and the other named defendants for action in compliance with this decision. Defendant Customs Service shall submit the new ruling letter to the Court as soon as practicable but in any event no later than 90 days from the date of this order.